Vernon Dale **JOHNSTON**, Appellant,

v.

**STATE** of Alaska, Appellee.

Nos. 1274, 1275.

Supreme Court of Alaska.

Sept. 29, 1971.

**14.** *Id.*

Victor D. Carlson, Public Defender, James D. Gilmore and Michael L. Rubinstein, Asst. Public Defenders, Anchorage, for appellant.

G. Kent Edwards, Atty. Gen., Juneau, Harold W. Tobey, Dist. Atty., Robert L. Eastaugh and Charles M. Merriner, Asst. Dist. Attys., Anchorage, for appellee.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR and ERWIN, JJ.

RABINOWITZ, Justice.

Appellant, Vernon Dale Johnston, was indicted for robbery, tried, and found guilty. A judgment and commitment was entered, and a sentence of eight years with three years suspended was imposed, to be served consecutively with sentences imposed in two other cases. We have consolidated Johnston's separate appeals from the judgment of conviction and the sentence.

At trial, taxicab driver James M. Phillips testified that at about 2:03 a.m. on July 29, 1969, he was beaten and robbed of about $48 to $50 by two men he had picked up as passengers. Phillips made a courtroom identification of Johnston as the robber who had been in the front seat of the cab. Phillips had gone to two lineups and picked no one from the first and Johnston from the second.

Guy Nel Roberts, a high school student, testified that during the evening of July 28, she, Tony Daniel, Cloyd "Bubby" Cash, and possibly Johnston, were together at a nightclub called the Alley. They left and she rode around in a car with this group and her girlfriends Lynn Stoner and Donna Baker. The group talked jocularly about robbing a liquor store. They then picked up another man named Jack Robinson who joined the plan. Thereafter they all went to an apartment in Mountainview. Appellant and Bubby Cash left with Jack Robinson at about midnight or 1 a. m. and returned 30 or 45 minutes later without Jack and with money in the hands of one of them talking about having robbed a taxicab driver. The prosecution also introduced Miss Roberts' prior statement to the effect that she had stated that Johnston had counted out $52 and gave $10 to Bubby for gas, saying that they would later divide the money.

Donna Jean Baker testified similarly in most respects. The state introduced evidence that in a prior statement to the police Miss Baker told them that Johnston had returned to the Mountainview apartment,

pulled out money, and talked of how they beat and robbed a Yellow Cab driver.[1]

Tony Ray Daniel testified that the robbery was his idea and that Johnston left the Mountainview apartment by himself and returned about midnight. Cash returned later and talked about robbing a cabbie but Johnston did not. The prosecution also introduced evidence that two days after the robbery occurred Daniel had told the police that Johnston had stated an intent to rob a taxicab, and had returned with Bubby Cash at 3:30 a. m. or 4 a. m., described the robbery, and counted out $52. Daniel claimed this statement was false because he had been on drugs at the time he made it.

Cloyd Dean Cash, Jr., testified that he had made a false prior statement to the police implicating Johnston because he was frightened and the police denied him access to a lawyer and had suggested to him what they wanted him to say. Cash also testified that he had been in a lineup in which the victim, Phillips, had identified a police officer resembling Johnston as one of the robbers.[2] In a presentence investigation statement to his probation officer Cash had implicated Johnston but according to Cash this statement was false and had been made in the hopes of lightening his sentence.

Appellant called Shirley Jane Kallman who testified that she was at her home on the night of the crime, and that Johnston was with her from about midnight to 3 a. m. The witness asserted she knew when Johnston had come because the Huntley-Brinkley show was on when he entered. Jack Robinson also gave testimony for the defense. He testified that the robber in the front seat was a hitchhiker they had picked up named John, not Johnston.

Appellant Johnston took the stand and testified that he was high on LSD the night of the robbery; that he left the party in the Mountainview apartment and spent two to three hours at Shirley Kallman's, return-

ing to the party at about 3:15 a. m.; that on the evening in question he had over $100 with him and loaned $10 to Bubby Cash.

On rebuttal the state called an employee of the Anchorage television station that broadcast the Huntley-Brinkley show. This witness testified that the business records of the station reflected that the Huntley-Brinkley show had not been broadcast on the night of the crime.

In this appeal appellant Johnston specifies three errors: First, that the trial court erroneously failed to instruct the jury that the testimony of Bubby Cash, an accomplice, should be viewed with distrust. Second, that the trial court erred in permitting the prosecution to introduce into evidence the statement Cash made to his probation officer. Third, that he was subjected to an improper pretrial lineup, and that the in-court identification which was made of him was not shown to be purged of the taint flowing from the prior improper pretrial identification.

We turn first to Johnston's assertion that error was committed by the trial court in failing to instruct that Bubby Cash's testimony should be viewed with distrust. Criminal Rule 30(b) provides in part that

[t]he court * * * whether or not requested to do so, shall give the following basic instructions on all proper occasions:

   \*    \*    \*    \*    \*    \*

(2) That the testimony of an accomplice ought to be viewed with distrust.
   \*    \*    \*

Johnston argues that the trial court committed reversible error in failing to give the 30(b)(2) instruction. It is contended that Bubby Cash was an accomplice in the robbery, and by the terms of the rule, the instruction was required and no request was necessary to enforce the requirement. In response the state advances the argument that the cautionary accomplice in-

---

1. On cross-examination the witness asserted that this statement was untrue and had been obtained by the police through blackmail.

2. A City of Anchorage police investigator testified that Cash could not have seen Phillips at the lineup because of a one-way mirror separating them.

struction called for by Criminal Rule 30 (b) is only to be given on a proper occasion. In this regard the state argues that the purpose of the cautionary instruction as to accomplice testimony is to protect the accused from an accomplice who lies in favor of the prosecution to benefit himself at the expense of his former associate. In the case at bar Cash's testimony exonerated Johnston. Thus the state makes the point that the reason for the rule had no application, and therefore this was not one of the "proper occasions" in which the Criminal Rule 30(b) (2) instruction was required. In such circumstances the state contends that at best the failure to give the cautionary accomplice instruction required by Criminal Rule 30(b) (2) was harmless error under Criminal Rule 47(a).[3]

The state's position has merit if one were to look only to Cash's testimony which exonerated Johnston. The question becomes more complex though because the state impeached Cash by introducing prior inconsistent statements he had made to the police and to a probation officer.

Under our governing rules of procedure, a party may impeach his own witness by showing that at other times he made statements inconsistent with his present testimony.[4] The prosecution in the case at bar employed this technique to introduce Cash's prior statements which were inconsistent with his exculpatory testimony concerning whether Johnston was involved in the robbery of Phillips. In Hobbs v. State, 359

P.2d 956, 967 (Alaska 1961), we said that we subscribe

to the view that the discretion of the trial judge shall govern the latitude of examination permitted in impeaching a party's own witness by showing other statements inconsistent with present testimony. The discretion exercised by the trial judge will not be disturbed on appeal unless an obvious abuse has been permitted. (footnote omitted) [5]

Also of significance is our holding in *Hobbs*

that generally the jury should be permitted to consider the examination of a party's own witness as to other statements inconsistent with his present testimony along with all other evidence in the case, on the ground that such a rule improves the likelihood of determining the truth. Whether the jury should be instructed that such evidence should be entirely disregarded, viewed with caution, or limited to consideration for impeachment purposes only, lies within the discretion of the trial judge.[6]

Review of the record indicates that at no point during the trial did Johnston's counsel seek to limit the use the jury could make of the state's evidence regarding Cash's prior inconsistent statements. On the other hand the court in its charge to the jury said that:

A witness may be impeached in a number of ways. For instance, he may be

3. Crim.R. 47(a) states:
   Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

4. In this regard Civ.R. 43(g) (11) (a) provides:
   The party producing a witness may not impeach his credit by evidence of bad character. He may contradict him by other evidence; and he may show that he has made at other times statements inconsistent with his present testimony, as provided in paragraph [c] of this subdivision.

   Civ.R. 43(g) (11) (c) states that:
   A witness may be impeached by evidence that he has made at other times statements inconsistent with his present

testimony. The statements must first be related to him, with the circumstances of times, places, and persons present, and the witness shall be asked whether he has made such statements and, if so, shall be allowed to explain them. If the statements are in writing, they shall be shown to the witness before he is asked any question concerning them.
   Crim.R. 26(a) makes these civil rules of procedure applicable to criminal actions in the superior court.

5. No claim is advanced here that the trial judge abused his discretion in any manner in regard to the state's impeachment of its witness Cash.

6. Hobbs v. State, 359 P.2d 956, 968 (Alaska 1961).

impeached by evidence affecting his character for truth, honesty, or integrity, or by contradictory evidence. He may also be impeached by evidence that at other times he has made statements inconsistent with his present testimony as to any matter material to this case.

However, the impeachment of a witness does not necessarily mean that his testimony is completely deprived of value or that its effect, if any, of the impeachment upon the credibility of the witness is for you to determine.

Thus, it appears that the only instruction of the court concerning the subject of a witness's prior inconsistent statements limited the use of such evidence to its potential impact upon the witness's credibility.

Given this context, we think that the trial court's omission to give the cautionary accomplice instruction required by Criminal Rule 30(b) (2), if error, was harmless error.[7] Here Cash attempted to exonerate Johnston in his direct testimony. This factor alone makes it a close question as to whether the case presented a proper occasion on which the cautionary accomplice instruction was required to be given. As to Cash's prior statements which incriminated Johnston, the latter's counsel elicited from Cash the circumstances surrounding the making of these prior statements which explanation, if believed, demonstrated their unreliability.[8] In light of all these considerations we think appellant was not disadvantaged by the absence of a cautionary accomplice instruction regarding Cash's testimony.

We next consider appellant Johnston's second specification of error in which he asserts that the trial court erred in allowing into evidence the statement Cash had made to his probation officer which contradicted the testimony Cash had given exonerating Johnston. At the trial Cash admitted that he had given a written statement concerning the robbery to the probation officer who worked up his presentence report. Johnston objected to the introduction of the statement on the ground that it was privileged and was not preceded by a *Miranda* warning. Asked if he had any objection to a reading of the statement, Cash replied, "I do if I don't have the— I do object to it if I don't—can't make an explanation of the statement." The court then permitted the prosecution to read the statement Cash had made to his probation officer. Cash then explained that the statement was false, and that he had lied, because he had not yet been sentenced. According to Cash, he had picked up another man, not Johnston, but he was sure almost to the point of certainty that naming Johnston would help his own standing with his probation officer.

Assuming, without deciding, that a privilege protecting confidential communications between a convicted defendant and his probation officer should be judicially created, we cannot find that the trial court erred in admitting Cash's statement to his probation officer.[9] If a privilege is created, its rationale would be that a probation officer's client should not fear to tell the truth because of the potential effects of the use of his statement against himself in a subsequent prosecution for the crimes revealed in the statement. Such purpose would not be interfered with by the use of the statement against others.

7. More particularly the failure of the trial court to give the cautionary accomplice instruction "did not appreciably affect the jury's verdict." Love v. State, 457 P.2d 622, 634 (Alaska 1969).

8. As to the statement given to the police, Cash related he was scared, that he requested counsel but the police denied his request, and that it was under such circumstances that he made the statement. Concerning the statement he made to the probation officer, Cash explained that he had not been sentenced as yet for the robbery in question, and that was the reason why he falsely "fingered" Johnston.

9. 8 J. Wigmore, Evidence in Trials at Common Law § 2285, at 527 (McNaughton rev. 1961) sets forth four fundamental conditions which are recognized as necessary to the establishment of a privilege against the disclosure of communications:
(1) The communications must originate in a *confidence* that they will not be disclosed.

We think that standing to assert this privilege with respect to a confidential communication should be more limited than standing to object to unlawfully obtained evidence since the latter is designed to deter unlawful conduct. The former is designed only to encourage unfettered revelation of information by the probation officer's client, and if the client does not object to having his information revealed, no purpose is served by maintaining secrecy. In this case, the witness Cash had no objection to the revelation of the statement he had made to his probation officer, provided he could explain the circumstances surrounding his giving of the statement. Since Cash was permitted to offer his explanation, we find no basis for holding that the statement was inadmissible. Again, assuming without deciding the existence of a privilege, only Cash possessed the requisite standing to object to disclosure of the statement. Lacking any objection on Cash's part we find no error in regard to this specification.

■ Appellant Johnston's final specification of error in connection with his appeal from the judgment of conviction is that he was subjected to an improper pretrial lineup under United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and that Phillips' identification of him was not shown to be purged of the taint flowing from the defective lineup. At the trial, counsel for Johnston failed to object when the prosecutor asked Phillips to perform an in-court identification. Counsel's failure to object had unusually severe effects because the trial judge was deprived of the opportunity to prevent error and the facts of the challenged lineup were not developed. Had objection been made, a record could have been developed showing where the lineup took place, whether suspicion had by then focused on Johnston, whether Johnston had an attorney present, and whether Johnston had validly waived his right to an attorney. Absent a timely objection by Johnston at trial, we do not reach his last specification of error.[10]

■ In appeal No. 1274, Johnston claims that the sentence imposed by the trial court was excessive. In light of the nature of the crime, the circumstances surrounding the commission of the robbery, and Johnston's prior record, we cannot find that the trial judge was clearly mistaken in imposing an eight year sentence with three years suspended upon condition that Johnston be placed on probation.[11]

Affirmed.

ERWIN, J., not participating.

---

(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered*.

(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation.

In regard to privileged communications *see* Note, Functional Overlap Between the Lawyer and Other Professionals: Its Implications for the Privileged Communications Doctrine, 71 Yale L.J. 1226, 1229 n. 21 (1962). In this note it is stated that:

The day of new judge-made privileges is apparently over. Prevailing judicial sentiment, as expressed in the reported cases and buttressed by the support of commentators and the organized bar, is that 'privileged communications, being generally in derogation of the common law, are not recognized unless expressly established by law.'

10. Johnson v. State, 486 P.2d 379 (Alaska 1971); Lanier v. State, 486 P.2d 981 (Alaska 1971); Cadzow v. State, 471 P. 2d 404, 405 (Alaska 1970); Hammonds v. State, 442 P.2d 39, 42–43 (Alaska 1968).

11. State v. Chaney, 477 P.2d 441, 444 (Alaska 1970). *See also* Robinson v. State, 484 P.2d 686 (Alaska 1971); Waters v. State, 483 P.2d 199 (Alaska 1971); Gilmore v. State, 479 P.2d 301 (Alaska 1971); Nicholas v. State, 477 P.2d 447 (Alaska 1970).