**David A. GILBERT, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3406.**

Supreme Court of Alaska.

Aug. 3, 1979.

---

Walter Carpeneti, Sue Ellen Tatter, Asst. Public Defenders, Brian Shortell, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

At 2:30 a. m. on November 6, 1976, a man armed with a gun attempted to rob the Sheffield House Hotel in Anchorage. Michael Bradley, one of the night clerks, called for help, and the bandit fled. Clifton Williams, the other clerk on duty, came out of a back office and ran after the robber. Bradley did not tell Williams that the man was armed. Williams saw a man in the alley behind the hotel, and scuffled with him until the man escaped. When the man was some 15 to 20 yards ahead of him, Williams saw him reach down, as if to draw a gun. Williams hit the ground, saw a flash from the man's hand, and heard what sounded like a shot. Williams gave up the chase and returned to the hotel.

At about the same time, a cab driver was driving along F Street between 5th and 6th when he heard a shot. He saw a man, waving a gun, run behind his cab. The driver called his dispatcher, and the dispatcher called the police.

Shortly thereafter, the police brought a suspect to the hotel for identification, but Bradley and Williams stated that this was not the right man.

At about 3:00 a. m. that same morning, a resident of the Y.M.C.A., which is located at 6th and F Streets, was conducting a routine bed check. He found David Gilbert, who was not a registered guest, in one of the upstairs rooms. Gilbert was asked to leave, but then it occurred to people at the Y that Gilbert matched a description of the Sheffield House holdup man which they had been given by the police. Therefore, they asked Gilbert to return to the Y.

At approximately 3:30 a. m., the police brought Williams and Bradley over to the Y. Gilbert was at the desk, facing away from the witnesses. There were a few other men in the Y lobby, Bradley testified that "the police officer asked me if anybody in that lobby was the man who attempted to rob me . . ." Williams testified that "the officer asked us, was this the guy that we saw, and I said, yes . . ." Both Williams and Bradley identified David Gilbert as being the person who had committed the attempted robbery and the assault, although Bradley's identification came after some hesitation. The cab driver was not brought to the Y.M.C.A. to make an identification. He identified Gilbert for the first time at trial.

Gilbert was searched by the police at the Y, but no weapon was found. Police searched the area around the Sheffield House and the Y.M.C.A. early the next morning. The fire department brought in a ladder so that the rooftops of nearby build-

ings could be searched. No gun was ever found. The police did find footprints in the snow on the Y.M.C.A. roof, however. The prints led from a fire escape to one of the Y's windows.

Gilbert was indicted for attempted robbery, assault with a dangerous weapon, and use of a firearm during the commission of an assault. Following a trial by jury, Gilbert was found guilty on all three counts. Gilbert was sentenced to two years on the attempted robbery count, four years for assault with a dangerous weapon, and ten years for use of a firearm during an assault, with the sentences to run concurrently. Six years of the sentence on the last count were suspended.

Gilbert appeals from the judgment and sentences, raising the following issues:

(1) Did the trial court err in failing to dismiss Counts II and III of the indictment owing to the manner in which the prosecutor defined "assault" for the grand jury?

(2) Should the prosecution have been required to elect between the two assault counts on the ground that they were multiplicious?

(3) Was the identification procedure violative of defendant's due process rights?

(4) Did the partially consecutive sentences imposed for assault with a dangerous weapon and assault while armed violate double jeopardy?[1]

I

Appellant argues that "[i]f the prosecutor omits or misstates elements of a crime to the grand jury contemplating an indictment so that the grand jury has an improper conception of the crime, the resulting indictment must be dismissed on due process grounds." Appellant then cites *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375 (1970), and *Henderson v. Kibbe*, 431 U.S. 145, 153, 97 S.Ct. 1730, 1735, 52 L.Ed.2d 203, 211 (1977), as authority for the propositions that the trial judge

may not misdefine the crime in his instructions to the jury, and that every element of the crime must be proved beyond a reasonable doubt.

■ Even assuming *arguendo* that the prosecutor misdefined the crime of assault in his remarks to the grand jury, the relationship of the *Winship* and *Kibbe* holdings to this problem is tenuous, at best. In this case, there is no allegation that the trial jury was improperly instructed regarding the elements of the crime of assault, or that the state failed to prove every element of the crime beyond a reasonable doubt. Apparently appellant wants us to reverse, in spite of the proper proceedings at trial, because of a slip of the prosecutor's tongue before the grand jury.

■■ This argument becomes even more tenuous when one reads the full text of the prosecutor's remarks. At the grand jury the prosecutor read the two relevant assault statutes to the grand jury. He then explained that "an assault in the eyes of the law is either the use of violence or the offer of violence by somebody who's in a position to deliver that violence." Appellant objects to this on the ground that "the offer of violence" language improperly refers to a tort concept of assault, in which the victim's apprehension of possible injury is controlling. He also urges that a specific intent to injure the victim should be an element of assault with a dangerous weapon.

In *Menard v. State*, 578 P.2d 966, 971 (Alaska 1978), we quoted approvingly from an 1889 Oregon case which defined assault as follows:

" 'to constitute an assault there must be an intentional attempt to do injury to the person of another by violence, and that such attempt must be coupled with a present ability to do the injury attempted.' "

*State v. Godfrey*, 17 Or. 300, 20 P. 625, 628 (1889). The use of the word "violence" in the definition of assault is obviously one

---

1. The state concedes error as to this last issue under *Whitton v. State*, 479 P.2d 302 (Alaska 1970), but argues that on remand for resentenc-

ing, a minimum sentence of ten years should be imposed on the assault with a dangerous weapon count.

acceptable way in which to describe the crime. *Menard* also lays to rest appellant's other arguments, as we there held that "[t]he jury did not have to find any specific intent to do any particular kind or degree of harm to the victim in order to find Menard guilty of assault with a dangerous weapon. *See Thompson v. State*, 444 P.2d 171, 174 (Alaska 1968); *Burke v. United States*, 282 F.2d 763, 768 (9th Cir. 1960)." *Menard, supra*, at 970.

■ Appellant's contention that an impermissible amendment of the indictment occurred is equally without merit. "An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them." (footnotes omitted) *Gaither v. United States*, 134 U.S.App.D.C. 154, 164, 413 F.2d 1061, 1071 (1969). Here, the terms of the indictment are correct. None of the charging terms were altered, either literally or in effect, after the grand jury returned the indictment.

We conclude that appellant's first claim of error has no merit.

## II

Appellant asserts that the prosecution should have been required to elect between proceeding on Counts II and III, because these counts are multiplicious.

Gilbert was charged with both assault with a dangerous weapon and use of a firearm during the commission of an assault. The charges arose out of a single act, firing one shot at Clifton Williams. Appellant argues that since both charges arose out of the same act, the prosecution ought to have been precluded from submitting both counts to the jury, as such "prolix pleading" could lead to jury prejudice.

In *Whitton v. State*, 479 P.2d 302 (Alaska 1970), the appellant challenged on double jeopardy grounds his conviction for robbery and for use of a firearm during the commission of the same robbery. In *Whitton*, we concluded that it was unclear whether the legislature intended the use of a firearm statute to be merely a penalty enhancing provision, or a distinct offense. 479 P.2d at 305. After reviewing tests traditionally applied to double jeopardy problems, we concluded that "the two separate statutory crimes constitute the 'same offense' for purposes of double jeopardy. A single sentence was all that could properly be imposed under the double jeopardy provision of our constitution." 479 P.2d at 314.

■ The *Whitton* opinion did not, however, address the problem of multiplicious charging. That issue was resolved the next year in *Robinson v. State*, 487 P.2d 681 (Alaska 1971):

"Appellant was indicted on two counts: Count I, robbery; and Count II, use of a firearm in the commission of a felony. At the close of all the evidence at the trial, but before the case went to the jury, appellant moved to dismiss the second count on the basis that *Whitton v. State* [sic], 479 P.2d 302 (Alaska 1970), required dismissal. *Whitton* provides specifically that only one sentence may constitutionally be imposed on the two counts charged herein, but says nothing about the submission of both counts to the jury. We find no error in this case in submitting both counts to the jury for their consideration."

487 P.2d at 682.

We are not persuaded by appellant's argument that prejudice was inflicted upon him because an election between these counts was not required. *Robinson* is dispositive, and we find no error.

## III

We must now consider whether Gilbert's due process rights were violated by the showup procedure conducted at the Y.M.C.A.

Appellant argues that the procedure was unnecessarily suggestive and conductive to misidentification. As appellant's trial counsel did not object to admission of identification testimony on the grounds of the improper pre-indictment showup, appellant now urges us to consider the issue under the plain error doctrine.

The state maintains that we ought not to invoke the plain error rule, citing *Johnston v. State*, 489 P.2d 134 (Alaska 1971).[2] Appellee also argues that the showup was reasonable and neither unnecessarily suggestive or unduly prejudicial. In addition to citing *Johnston v. State, supra*, appellee argues that since Gilbert's attorney cross-examined the identification witnesses effectively, any error regarding the Y.M.C.A. showup was rendered harmless.[3]

Criminal Rule 47(b) states:

"*Plain Error.* Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

■ We have often noted that under this rule an asserted error not brought to the attention of the trial court will not be noticed on appeal unless it affects a substantive right and is obviously prejudicial.[4] Where the error is not obvious or immediately apparent we should abstain from a full-scale examination of it, for the basic rule is that failure to object to offered evidence waives the objection. When errors concerning fundamental rights are asserted, there is a greater inclination on the part of an appellate court to examine such claims on the merits.[5] But not all constitutional claims require extensive review under the plain error rule. To say that asserted errors of constitutional dimension must all be examined in depth under the plain error rule would circumvent the strong basic policy which requires that, in order to preserve an error for appeal, an objection must have been made in the trial court. Appellate courts must retain some discretion, even when constitutional claims are asserted, as to when and how far they will review the admission of evidence as to which no objection has been registered in the trial court.

■ In the case before us we have undertaken to consider whether a tenable claim is presented that the identification of Gilbert, under the totality of circumstances surrounding it,[6] was so unnecessarily suggestive, considering the exigencies of this case, that it amounted to a violation of due process. Our consideration has led us to the conclusion that the argument for the admissibility of this evidence is strong, and the argument against its admissibility is not compelling. In other words, the claimed error is not obviously prejudicial. We hold that the trial court did not err in admitting the identification evidence.[7]

## IV

The state concedes that under *Whitton v. State*, 479 P.2d 302 (Alaska 1970), the trial

2. *Johnston* is, as appellant points out in his reply brief, distinguishable. In that case, the effect of counsel's failure to object to the admission of in-court identification was "unusually severe" because there was no record of where the lineup had taken place, whether suspicion had at that time centered on Johnston, whether the defendant had had an attorney present, or whether Johnston had made a valid waiver of his right to have counsel present. Under these circumstances, we refused to consider the validity of the pretrial lineup under the plain error rule. 489 P.2d at 139. In the instant case, however, the record contains all of the necessary background facts which were missing in *Johnston*.

3. Mere cross-examination would not eliminate the error. *See United States v. Wade*, 388 U.S. 218, 235–36, 87 S.Ct. 1926, 1937, 18 L.Ed.2d 1149, 1162 (1967).

4. *Burford v. State*, 515 P.2d 382, 383 (Alaska 1973); *Kugzruk v. State*, 436 P.2d 962, 964

(Alaska 1968); *Bowker v. State*, 373 P.2d 500, 505 (Alaska 1962).

5. *Hammonds v. State*, 442 P.2d 39, 43 (Alaska 1968); *Goresen v. State*, 432 P.2d 326, 327 (Alaska 1967); *Alexander v. United States*, 390 F.2d 101, 103 n. 3 (5th Cir. 1968).

6. *Neil v. Biggers*, 409 U.S. 188, 196, 93 S.Ct. 375, 34 L.Ed.2d 401, 409 (1972); *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199, 1206 (1967); *Blue v. State*, 558 P.2d 636, 643 (Alaska 1977).

7. Under the technique we have employed, we must, of course, consider the record and the applicable law, just as we might if we gave the matter full-scale review under the plain error rule. But, where no glaring error appears, there is no need to embark upon a lengthy, detailed discussion of the evidence and the relevant law. It is enough that we satisfy ourselves that this is not a situation calling for review under the plain error rule.

judge could not impose two sentences for violation of AS 11.15.220 (assault with a dangerous weapon, Count II) and AS 11.15.-295 (use of a firearm during the commission of an assault, Count III). The state argues, however, that on remand for resentencing, Gilbert should receive a minimum ten year sentence under AS 11.15.295.[8]

Appellant, in reply, argues that an increased sentence on remand would violate the prohibition against double jeopardy, and that AS 12.55.080[9] gives the trial judge the authority to suspend a portion of the defendant's sentence, in spite of the mandatory sentence provided for in AS 11.15.295.

We have recently decided the latter point in appellant's favor in *Deal v. State*, 587 P.2d 740 (Alaska 1978), and we need not resolve the former because our disposition of this case obviates any double jeopardy problem.[10]

■ If we were to remand the case the court could simply vacate the sentence under Count II and reimpose the sentence under Count III, although the probationary period could not exceed five years.[11] The sentence imposed as to Count III by the trial court represents its best judgment as to the appropriate punishment for Gilbert's crimes. We see no point in remanding the case. We merely direct that an amended judgment be entered reflecting a sentence of two years on Count I, attempted robbery,

and ten years, with six years suspended, on Count III, use of a firearm during an assault, with Gilbert to be on probation for five years during the suspended period. These sentences shall run concurrently. No sentence can be imposed on Count II, assault with a dangerous weapon.

The convictions are AFFIRMED. The case is REMANDED for entry of an amended judgment.

BURKE, Justice, concurring.

I think there is a serious question whether the trial court had the authority to suspend any part of the minimum ten-year sentence required by AS 11.15.295. When that section was enacted, in 1968, the House Judiciary Committee reported:

This bill imposes *mandatory sentences* on the first and subsequent convictions for the commission of certain serious crimes if the individual is carrying a firearm. There is a 10–year minimum sentence for the first offense and 25 years for a subsequent offense.

1968 House Journal 434 (emphasis added). Thus, it appears to me that a strong argument can be made that the legislature intended to exempt such violations from the operation of those statutes otherwise allowing the trial courts to suspend the execution or imposition of all or part of a sentence of imprisonment. *See* AS 12.55.080–090. The

8. AS 11.15.295. *Use of firearms during the commission of certain crimes.* A person who uses or carries a firearm during the commission of a robbery, assault, murder, rape, burglary, or kidnapping is guilty of a felony and upon conviction for a first offense is punishable by imprisonment for not less than 10 years. Upon conviction for a second or subsequent offense in violation of this section, the offender shall be imprisoned for not less than 25 years.

9. AS 12.55.080. *Suspension of sentence and probation.* Upon entering a judgment of conviction of a crime, or at any time within 60 days from the date of entry of that judgment of conviction, a court, when satisfied that the ends of justice and the best interests of the public as well as the defendant will be served thereby, may suspend the imposition or execution or balance of the sentence or a portion thereof, and place the defendant on probation

for a period and upon the terms and conditions as the court considers best.

10. We not, however, without deciding, that there is substantial authority which holds that, in correcting an illegal sentence, it is not violative of double jeopardy to impose a greater sentence than the one which is vacated. *Bozza v. United States*, 330 U.S. 160, 165–67, 67 S.Ct. 645, 91 L.Ed. 818 (1947); *United States v. Solomon*, 468 F.2d 848, 850–52 (7th Cir. 1972); *State v. Pringle*, 83 Wash.2d 188, 517 P.2d 192, 196 (1973). *Sonnier v. State*, 483 P.2d 1003 (Alaska 1971), is not to the contrary, for that case did not deal with an illegal sentence.

11. The probation period set by the court, six years, was in excess of that permitted by AS 12.55.090(c), which states:

"The period of probation, together with any extension, shall not exceed five years."

state, however, has not seriously addressed this issue in its brief.

If AS 11.15.295 does in fact require an offender to serve a ten-year mandatory term of imprisonment, I assume that the trial court's action in suspending the execution of six years of the defendant's sentence was illegal and that therefore, the order of suspension could be stricken without violating the double jeopardy provisions of the state constitution. However, since the state has failed to brief this issue or otherwise urge such a construction of the statute, I concur in the decision reached by my colleagues. As to the other issues, I share their views.