Donovan Wesley McGEE, Appellant,

v.

STATE of Alaska, Appellee.

No. 3904.

Supreme Court of Alaska.

July 25, 1980.

Mitchel J. Schapira, Edgar Paul Boyko & Associates, Anchorage, for appellant.

James P. Doogan, Jr., Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

Donovan McGee appeals from his convictions for assault with a dangerous weapon (AS 11.15.220) and malicious destruction of property (AS 11.20.515). The events leading to his convictions are as follows.

On July 6, 1977, at approximately 5:30 p. m., Mark Goodson was driving an Alyeska truck in a northerly direction along the Richardson Highway. He was accompanied by Ricky McFarlin. A few miles north of Isabel Pass at approximately mile 201 of the Richardson Highway, a black Ford pickup pulled alongside of them. The person riding in the passenger seat of the pickup shouted to Goodson and McFarlin, asking them who they worked for. When Goodson replied that they worked for "ACV" the black pickup pulled in front of the Alyeska truck and began to slow down, weaving back and forth in order to prevent Goodson from passing. At one point, Goodson attempted to pass the black pickup but thought better of it when the driver brandished a pistol and shouted "pass me and you're dead."

After about four miles, Goodson was forced to pull off to the side of the road. The two men in the black pickup then disembarked from their truck, approached the Alyeska vehicle and forced Goodson and McFarlin to climb out. The two men, each of whom had a gun,[1] accused Goodson and McFarlin of being "scab laborers" and forced them at gunpoint to climb into the back of the black pickup. According to Goodson, one of the men said "We're going to kill you" and "This is a one way ride for you guys."

After being subjected to a verbal tirade by the two men, Goodson and McFarlin eventually convinced their captors to release them. As Goodson and McFarlin were walking away from the scene of the assault, however, they heard gunshots. As they turned around they saw the man who had been driving the black pickup shoot at the Alyeska truck.

Goodson and McFarlin were able to hitchhike to the Alyeska pipeline camp at Glennallen and immediately reported the incident to Officer Ingalls of the Alaska State Troopers. McFarlin described the black pickup to Trooper Ingalls in some detail[2] and stated that he thought the license plate number contained three twos. After taking statements from Goodson and McFarlin, Trooper Ingalls then visited the scene of the alleged crime where he recovered five expended .45 caliber cartridges. A vehicle registration check revealed that the appellant owned a black Ford pickup with Alaska license plate number 2223AG. Acting on this information, Troopers Cole, Sagraves and Stuart drove to Paxson Lodge area on July 8, 1977, to question the appellant.

Having first observed appellant's black Ford pickup, Trooper Cole then located the appellant at the restaurant of the Paxson Lodge and requested him to step outside to talk. Once in the parking lot, but before questioning began,[3] Trooper Cole notified appellant that he was a suspect in a crime, and that he and his vehicle matched the descriptions that Trooper Cole had been

---

**1.** According to McFarlin, the driver had a .45 caliber or a 9 mm automatic pistol with a blue steel barrel, and the passenger had a similar weapon with a chrome or nickel finish.

**2.** McFarlin described the truck to Officer Ingalls as a 1976 or 1977 black Ford Pickup equipped with four wheel drive, mag wheels

with white spokes, a camper shell and a CB antenna on top of the cab.

**3.** Appellant testified that Trooper Cole told him he was a suspect in a crime, but did not advise him of his *Miranda* rights until after asking appellant whether he owned a gun.

given and advised him of his *Miranda* rights. Appellant stated that he understood his rights. Trooper Cole then asked appellant if he owned a .45 automatic pistol. Appellant replied that he did and Trooper Cole asked if he could see it. Appellant agreed to show the troopers the weapon and the scene then shifted to appellant's trailer, about 100 yards distant, where the gun was located. Once there, appellant produce a "blued" .45 automatic pistol and some ammunition. After examining the gun, Trooper Cole informed appellant that he was taking the weapon and the ammunition.

Later that day Trooper Ingalls received 32 Alyeska identification badges which he had requested from Alyeska. These photographs were arranged in two long rows and used in a photographic lineup which was viewed by Goodson and McFarlin. Goodson viewed the lineup first but could not identify any of the pictures. McFarlin then viewed the pictures and identified McGee as the person who drove the black pickup truck.

At trial, appellant denied any complicity in the assault upon Goodson and McFarlin. Appellant testified that at the approximate time of the incident he was at Paxson Lodge with his wife and friends and that he did not leave Paxson until approximately 7:30 p. m., well after the incident allegedly took place.

Appellant appeals his conviction on several grounds. We will deal with each of these contentions in the order in which they were raised.

## I

Appellant's first assignment of error is that, in addition to instructions on the main charge of assault with a dangerous weapon, the trial court, sua sponte, should have instructed the jury on the lesser included offenses of careless use of firearms and

simple assault. Appellant acknowledges that, in view of his failure to request such instructions at trial or object to their omission, his claim is cognizable, if at all, only under the doctrine of plain error.[4]

It is not every claim that deserves review under the plain error rule. We have previously noted with regard to the admissibility of evidence:

"Where the error is not obvious or immediately apparent we should abstain from a full-scale examination of it, for the basic rule is that failure to object to offered evidence waives the objection."

*Gilbert v. State*, 598 P.2d 87, 92 (Alaska 1979). In *Gilbert*, as a method of inquiry, we proceeded to consider whether appellant had presented a tenable claim. We concluded that he had not done so and, therefore, held that there was no plain error. We reach a similar result here.

■ At trial, appellant denied any complicity in the crime and presented only exculpatory evidence. There was no evidence adduced at trial which tended to show that a lesser crime had been committed nor did the state fail to prove all elements of the crime charged. Accordingly, the appellant could only have been found guilty of the crime charged or not guilty at all.[5] Under the circumstances we conclude that the claimed error was not "obviously prejudicial." *Gilbert v. State*, 598 P.2d at 92. Therefore, the trial court did not commit plain error in failing to instruct, sua sponte, on lesser included offenses.

■ Appellant next contends that the photographic identification procedure was so impermissibly suggestive and unreliable as to violate due process of law. *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967); *Noble v. State*, 552 P.2d 142, 146 (Alaska 1976). We need not reach this issue because we are convinced that appellant waived the argu-

---

4. Criminal Rule 47(b) states:

"*Plain Error.* Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

5. We indicated in *Christie v. State*, 580 P.2d 310, 317 n.22 (Alaska 1978), that in such situations an instruction on lesser included offenses need not be given.

ment at trial.[6] Appellant, however, makes the related claim that the trial court erred in failing to give appellant's requested instruction cautioning the jury that the identification procedure may be suggestive. Since this contention was properly preserved and was not waived at trial we consider it now.

■ Appellant's proposed instruction would have advised the jury of the possibly suggestive nature of lineups and would have instructed the jury to disregard evidence adduced as a result of a suggestive procedure. The instruction actually given merely advised the jury in general terms on the credibility of witnesses.

We confronted a similar problem in *Buchanan v. State, opn. on rehearing,* 561 P.2d 1197, 1207 (Alaska 1977). In that case, appellant requested an identification instruction which went beyond the trial court's instruction by focusing attention on possible inadequacies of a witness's identification. Instead of giving appellant's instruction, the court gave a general instruction that the state had the burden of proving accurate identification beyond a reasonable doubt. Without passing upon the correctness of appellant's proposed instruction, we held that the trial court committed no error. In reaching our conclusion we noted that whether a particular instruction should be given rests in the discretion of the trial court and that the instruction which the court gave embodied correct statements of the controlling law. *Id.* We also noted that all of the factors contained in Buchanan's proposed instruction were referred to by appellant's counsel in closing argument. *Id.* at n.28.

In the case at bar, the court's instruction accurately advised the jury to consider "any matter that has a tendency or reason to prove or disprove the truthfulness of [a

witness'] testimony." The court then listed several factors which might affect a witness's credibility including, but not limited to, the reasonableness of his testimony in light of all the evidence in the case.[7] We think this instruction was entirely adequate. Moreover, as in *Buchanan,* appellant's counsel discussed at some length in final argument the suggestibility of the lineup procedure. In these circumstances, we think the trial court's failure to give appellant's proposed instruction did not constitute error.

### III

Appellant's next contention is that the trial court erred in failing to suppress certain ballistics evidence claimed to have been the result of an illegal search and seizure. Before trial, appellant moved to suppress this evidence but that motion was denied.

The claim arises from circumstances surrounding the visit of Troopers Cole, Sagraves and Stuart to Paxson Lodge on July 8, 1977. As previously recounted, Trooper Cole fully advised appellant of his *Miranda* rights and then asked appellant if he owned a .45 automatic pistol. Appellant said that he did own such a weapon and proceeded to lead the troopers to it. Appellant handed the weapon to Officer Cole who, after examining it, informed appellant that he was taking the weapon along with the ammunition. Appellant now contends that he never voluntarily consented to either the viewing or the taking of the gun and the ammunition and that, therefore, the troopers actions must be considered an unreasonable search and seizure because those actions took place without a warrant and were not within a valid exception to the warrant requirement.

■ Both the Fourth Amendment to the federal constitution and its counterpart

---

6. The record reveals that appellant failed to make timely objection to the introduction of evidence concerning the lineup. Appellant appears to have made a tactical decision in this regard, preferring to argue a tainted lineup to the jury rather than attempting to suppress the lineup entirely.

7. In two recent cases, we approved almost identical instructions over claims that a more specific identification instruction should have been given. *Dayton v. State,* 598 P.2d 67, 68 (Alaska 1979); *Huske v. Municipality of Anchorage,* 585 P.2d 504 (Alaska 1978).

found in article I, section 14 of the Alaska constitution furnish guarantees against unreasonable searches and seizures. Those provisions are only operative, however, when there has in fact been either a "search" or a "seizure".[8] In *Brown v. State*, 372 P.2d 785, 790 (Alaska 1962), we defined "search" in the following manner:

"[T]he term [search] implies some exploratory investigation or an invasion or quest, a looking for or seeking out. The quest may be secret, intrusive or accomplished by force, . . . either actual or constructive, much or little. A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way. While it has been said that ordinarily searching is a function of sight, it is generally held that the mere looking at that which is open to view is not a 'search.'" (*quoting People v. West*, 144 Cal.App.2d 214, 300 P.2d 729, 733 (1956)).

We do not believe that the trooper's conduct in this case constituted a search within the meaning of *Brown*. The facts show that appellant himself retrieved the weapon and presented it to Trooper Cole. There is no evidence of duress or coercion on the part of the troopers. Consequently, no "exploratory investigation" on the part of the troopers was required, nor was one carried out. Had the facts been otherwise—for example, had appellant told the troopers to "find the weapon if you can"—a search would have occurred and we would then be required to examine whether consent to search was freely given. Under the circumstances of this case, however, that issue is not raised.

A more difficult question is whether the trooper's conduct constituted an unreasonable seizure. In *Brown v. State*, 372 P.2d at 790, we defined a seizure as "a forcible dispossession of the owner and . . . not a voluntary surrender." *quoting People v. West*, 144 Cal.App.2d 214, 300 P.2d 729, 733 (1956). In the present case, although appellant voluntarily surrendered the weapon to Trooper Cole for the purpose of immediate inspection, we are not convinced that he thereby intended to give up custody of the weapon for other purposes. This conviction is strengthened by the fact that Trooper Cole never asked appellant's permission to take the weapon. Moreover, in response to Trooper Cole's statement that he was taking the weapon, appellant testified that he said, "There's not much I can do about it, is there?" and, "I don't appreciate the fact that you're taking my guns." These are not the statements of a man intent upon giving up custody of his gun. We, therefore, find that a seizure did occur.[9]

The fact that a seizure occurred does not settle the matter, however, for once the gun was presented to the troopers for viewing they were entitled to seize it as evidence in plain view.[10] As the United States Su-

---

**8.** As Professor Amsterdam notes, the words "searches and seizures" are terms of limitation. Law enforcement practices are not required to be reasonable unless they are either "searches" or "seizures." Amsterdam, Perspectives on the Fourth Amendment, 58 Minn.L.Rev. 349, 356 (1974).

**9.** The foregoing facts are distinguishable from *Sleziak v. State*, 454 P.2d 252 (Alaska 1969), where we found that no seizure had occurred. In *Sleziak*, the evidence of a voluntary surrender of possession was much clearer. In that case, Sleziak was requested to appear at Alaska State Trooper Headquarters in Anchorage for questioning concerning a recent homicide. After first being informed of his *Miranda* rights and indicating a willingness to talk, Sleziak admitted ownership of a .32 revolver. Sleziak was then asked, on three separate occasions, whether he objected to the police testing the weapon. On each occasion Sleziak answered that he had no objection. When state troopers were dispatched to Sleziak's residence to retrieve the weapon, they were met by Sleziak's roommates who had apparently been apprised of the situation and who offered no resistance. The roommates led the troopers to the weapon and voluntarily relinquished possession.

**10.** Although the plain view justification was mentioned at the suppression hearing, it was never argued to the court. McGee maintains that the state is therefore precluded from raising this theory on appeal. We disagree. Our previous opinions establish that a correct ruling of law by a trial court may be affirmed, regardless of the reasons advanced, if there

preme Court stated in *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067, 1069 (1968):

> "It has long been settled that objects falling in the plain view of an officer who has a right to be in a position to have that view are subject to seizure and may be introduced in evidence." [11]

■ The Fourth Amendment, of course, requires that before seizing an item in plain view, the police must have probable cause to believe that the item seized is a fruit, instrumentality or evidence of a crime. Here appellant asserts that the troopers had no probable cause to believe that the gun which appellant showed them was the same gun used against Goodson and McFarlin.

■ Appellant, however, misapprehends the requirements of probable cause. As the Supreme Court stated in *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890 (1949), "[i]n dealing with probable cause, . . . as the very name implies, we deal with probabilities." *See also, Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637, 645 (1969). It has been said that in a search and seizure context probable cause does not mean "more likely than not" or "by a preponderance of the evidence," rather, the words connote something more akin to "reasonable cause." *United States v. Melvin*, 596 F.2d 492, 495 (1st Cir. 1979), *cert. denied*, 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979). *Accord Reeves v. State*, 599 P.2d 727, 739 (Alaska 1979).

In *Melvin*, a search warrant was issued for defendant's home on the basis of facts indicating that the defendant owned a white Cadillac, a relatively unusual car, and that a man fitting the general description of the defendant had been observed driving away from the scene of an explosion in a white Cadillac shortly before its occurrence. The court held that, on the basis of these facts, it was reasonable to believe that materials used for the construction of a bomb would be found in the defendant's home and that the warrant was, therefore, proper.

The present case bears certain similarities to *Melvin*. The police had a fairly detained description of the vehicle used in the crime, including a partial license plate number. The vehicle, a black Ford pickup with mag wheels, was described as the only one of its kind in the vicinity and was found in front of McGee's home. Moreover, McGee, the owner of the vehicle, fitted the general description of the suspect. In these circumstances we think it was reasonable for the officers to infer that McGee's gun was the weapon used to perpetrate the crime. Where there is probable cause that a crime has been committed and also probable cause that a particular person committed it, we think a lesser degree of probability will suffice to justify temporary seizure of a weapon to determine if it was involved in the crime. *See*, W. LaFave, Search and Seizure, § 3.2 at 492 (1978). Viewing the totality of the circumstances we conclude that the seizure of appellant's gun was not unreasonable.[12]

---

exist independent grounds which, as a matter of law, support the trial court's conclusion. *Pistro v. State*, 590 P.2d 884, 888 n.13 (Alaska 1979); *Stordahl v. Government Employees Ins. Co*, 564 P.2d 63, 67 n.16 (Alaska 1977).

We are unpersuaded by McGee's contention that permitting argument of the plain view theory on appeal is unfair because he had no opportunity to develop an adequate record on that theory at trial. The essential facts necessary to our conclusion that the police properly seized the weapon as evidence in plain view were not disputed by McGee. We, therefore, see no basis for McGee's claim of prejudice.

**11.** *Accord, Klockenbrink v. State*, 472 P.2d 958, 961 (Alaska 1970); *Pope v. State*, 478 P.2d 801, 805 (Alaska 1970).

**12.** In *Reeves v. State*, 599 P.2d 727, 738 (Alaska 1979), we recognized three requirements for the plain view seizure of evidence: (1) the initial intrusion which afforded the view must have been lawful; (2) the discovery of the evidence must have been inadvertent; and (3) the incriminating nature of the evidence must have been immediately apparent. We recognize that the inadvertence requirement is lacking in this case, however, in *Reeves*, as well as other cases applying the plain view doctrine, the seizure in question was preceded by a search. We think that in non-search situations such as the

## IV

■ Appellant next contends that the trial court abused its discretion by qualifying John Sauve as an expert on ballistics.[13] Appellant contends that the type of equipment used by Sauve, the procedures employed, and Sauve's admission that he did not perform those tests normally expected of an expert in the field, were all relevant to Sauve's qualifications as an expert. We disagree.

Sauve's qualifications to testify as an expert depend on his experience and training, not upon what he might say once qualified by the court. As to this, the record reveals that Sauve was amply qualified to be considered an expert in the field. Once qualified as an expert, any deficiencies in his testimony would go to the weight to be accorded that testimony, not its admissibility.

## V

■ Appellant's fifth contention is that the trial court abused its discretion in two respects during the voir dire of prospective jurors. First, appellant alleges that the court erred in refusing to excuse juror Pickett who was challenged for cause on the basis of an admitted hearing problem. Appellant later used a peremptory challenge to excuse Pickett.

In *City of Kotzebue v. Ipalook*, 462 P.2d 75, 77 (Alaska 1969), we said: "Trial court discretion as to challenges for cause is interfered with only in exceptional circumstances and to prevent miscarriages of justice." *See also, Mitchell v. Knight*, 394 P.2d 892, 897 (Alaska 1964). The present case involves no such exceptional circumstances. Before ruling on the challenge the court questioned juror Pickett as to the extent of his problem. Pickett stated that up to that point he had had no trouble hearing the proceedings. The court then stated:

present, the requirement that discovery be inadvertent is inapplicable. The inadvertent discovery requirement assures that police will not intentionally expand the permissible scope of an otherwise lawful search. Where there is no search, there is, *a fortiori*, no danger that the police will exceed their permissible limits.

"I'm not going to excuse him on this basis at this time. We'll select two alternates, and if—after the trial gets into the proceeding, if he has a problem he can be excused. But apparently he hasn't missed anything so far, and he's willing to serve."

We are satisfied that the trial judge did not abuse his discretion in failing to excuse juror Pickett for cause. Moreover, appellant did not exhaust his peremptory challenges. *City of Kotzebue v. Ipalook*, 462 P.2d at 77.

■ As his second allegation of error on voir dire appellant contends that the court substantially inhibited or impaired his ability to question prospective jurors by reserving its ruling on the admissibility of certain ballistics evidence until after trial had begun. Appellant contends that since he did not know whether the ballistics evidence would be admissible, and did not want to raise matters before the jurors which he hoped to exclude from trial, he was unable to properly question prospective jurors concerning possible bias towards ballistics evidence.

The record in this case indicates that the court's decision to reserve its ruling on appellant's suppression motion was unavoidable. Through a series of delays, caused primarily by defense counsel's inability to attend the suppression hearing, appellant's motion could not be heard until the first day of trial. Since the jury panel was already waiting, the court ruled that the suppression hearing would have to be scheduled so as not to interfere with the trial. The suppression hearing was therefore scheduled for the following day, after the jury had been empaneled. We think this was correct.

■ In *Burleson v. State*, 543 P.2d 1195, 1200 (Alaska 1975), we said:

13. It should be noted that Sauve was not qualified as an expert on ballistics, but rather as an expert on tool mark identification.

"Efficiency in the operation of the court system and the interest of the public in prompt disposition of criminal cases dictate that unnecessary delays be avoided."

Of course, as we said in *Burleson*, considerations of efficiency must give way where substantial rights of a defendant are concerned. *Id.* In the present case, however, we do not believe such rights were affected. Although appellant may have been inhibited from asking questions about ballistics evidence he nevertheless was able to and did question potential jurors about expert testimony in general. We think this was sufficient.

## VI

Following trial and after the jury had returned its verdict, appellant moved for judgments of acquittal on both counts pursuant to Alaska Criminal Rule 29(a). Appellant alleged that the state had failed to present evidence that the crimes charged had been committed in the Fourth Judicial District. The trial judge denied both motions.

Significantly, appellant does not argue that there is any doubt as to where the crime occurred. Indeed, five witnesses testified that the crime occurred at approximately Mile 205 or 206 of the Richardson Highway. Rather, appellant contends that there was no evidence that this location was within the Fourth Judicial District.

■ We think appellant's argument is clearly without merit. Even assuming the correctness of his position, we are empowered to take judicial notice of the constitution and public laws of this state. Alaska Rules of Evidence 202(b); Alaska Civil Rule 43(a). Since the boundaries of the Fourth Judicial District are clearly delineated by AS 22.10.010, we now take judicial notice of the fact that Mile 206 of the Richardson Highway is within that judicial district.

For the foregoing reasons the judgment and commitment entered by the superior court are affirmed.

AFFIRMED.