**Buddie Robert RICH, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 5566.**

Court of Appeals of Alaska.

Feb. 11, 1982.

---

Christine Schleuss, Anchorage, and William F. Morse, Kenai, Asst. Public Defenders, and Dana Fabe, Public Defender, Anchorage, for appellant.

Charles M. Merriner, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

### OPINION

PER CURIAM.

On March 17, 1980, a felony information was filed charging Buddie Rich with two counts of attempted burglary in the first degree. On August 11, 1980, Rich entered a plea of *nolo contendere* to a reduced charge of first degree criminal trespass, a misdemeanor. At that time, Rich was participating in a residential alcohol rehabilitation program at the Salvation Army's Clitheroe Center. Superior Court Judge Victor D. Carlson, after hearing sentencing arguments, suspended the imposition of Rich's sentence for a period of one year. As a special condition of the suspended imposition of sentence, he ordered Rich to "participate for the full year with an alcohol rehabilitation group, whether that's AA or the Salvation Army or whatever." [1]

---

1. The special condition stated orally at Rich's sentencing was entered into his judgment of conviction as special condition No. 2, which read as follows:

On August 14, 1980, Rich was arrested in Anchorage and charged, under municipal ordinances, with assault and battery on a police officer, consuming liquor in a public place, and escape from custody. A petition to revoke his probation was filed several days thereafter, alleging a number of violations. When Rich was arraigned on the petition, the state moved, without objection, to amend Count I of the petition to allege that Rich violated the special condition of his probation requiring him to continue participation in an alcohol rehabilitation program. The new allegation was denied by Rich, and a probation revocation hearing was scheduled for August 28, 1980; by agreement of the parties, the amended allegation of Count I was to be the sole issue presented at the initial revocation hearing.[2]

At the revocation hearing, the state produced evidence establishing that Rich left the Salvation Army program without permission during the evening of August 13 or the morning of August 14, 1980. He was placed on AWOL status by the Salvation Army on the morning of August 14. During the morning of August 14, Rich was observed by an Anchorage police officer consuming liquor in a public place, and he was instructed to refrain from drinking in public. Shortly after noon, the same officer made contact with Rich in the parking lot behind the Montana Club, between Fifth Avenue and B Street in Anchorage. Although Rich did not exhibit signs of intoxication, it appeared to the officer that he had recently been drinking. In addition, the officer observed alcoholic beverages in Rich's car. After Rich was determined to be AWOL from the Salvation Army program, representatives of Anchorage's Treatment Alternatives to Street Crime program issued an agency alert indicating his AWOL status. They later ascertained that Rich was incarcerated, having been arrested for assault and battery on an officer.

Rich presented no evidence at his revocation hearing, although his attorney represented that Rich had left the Salvation Army program with the intent to attend Alcoholics Anonymous meetings beginning August 15, in lieu of continuing his participation with the Salvation Army. At the conclusion of the revocation hearing, Judge Carlson found that Rich had violated the special condition of his probation requiring him to participate in an alcohol rehabilitation program; he then revoked Rich's probation and imposed a maximum one-year sentence.

On appeal, Rich raises two primary arguments. He contends, first, that the evidence presented by the state at his revocation hearing was insufficient to support a finding that he had violated the special condition of probation requiring him to participate in an alcohol rehabilitation program for a one-year period. His second contention is that summary revocation of his probation and imposition of a maximum sentence was improper. These arguments will be considered in turn.

■ At the conclusion of Rich's revocation hearing, the court found that the state had established a violation of the special condition requiring Rich to participate in an alcohol rehabilitation program. While we believe that the evidence indicating that Rich left the Salvation Army program without permission, consumed alcohol in public, and was subsequently arrested might have been sufficient to support a finding that Rich had violated the special condition of his probation, specific comments made by the court in this case are ambiguous and problematical. On at least two occasions during the hearing the judge indicated that if Rich had consumed any amount of liquor he would have violated the special condition of probation that he was accused of violat-

Defendant shall participate for one full year from this date with [an] alcohol rehabilitation program, such as Alcoholics Anonymous or Salvation Army.

2. The parties had apparently agreed that other allegations of the petition relating to the offenses for which Rich had been arrested would be separately presented to the court at a later time in the event that the state could not establish a violation at the August 28 hearing.

ing. The judge, however, did not specifically state what evidence he relied upon in finding that Rich had violated the terms of his probation; thus, it is impossible for us to determine whether this finding was based upon consideration of the totality of the evidence or solely on the showing that Rich had consumed alcohol.[3]

In order to comport with the requirements of constitutional due process, a condition of probation must be sufficiently precise and unambiguous to inform the probationer of the conduct that is essential so that he may retain his liberty. *Holton v. State*, 602 P.2d 1228, 1238 (Alaska 1979). It is unquestionable that the special condition of probation in this case adequately apprised Rich that he would be required to participate in an alcohol rehabilitation program for a period of one year from the date of judgment on a continuous, uninterrupted basis. However, we do not believe that the language of the special condition or the remarks made by Judge Carlson prior to imposing this condition could fairly be construed to have placed Rich on notice that "participation" meant no consumption of alcohol whatsoever and that no amount of backsliding on Rich's part would be tolerated.[4] Accordingly, a remand to the superior court will be necessary.[5] On remand, the superior court should reassess the totality of the evidence and on that basis determine whether Rich violated the special condition of his probation.

We must next consider whether the superior court's revocation of Rich's probation and its imposition of a maximum one-year sentence were proper. Under well-established and long-standing decisions of both the United States Supreme Court and the Supreme Court of Alaska, revocation proceedings involve two distinct and independent phases. *Morrissey v. Brewer*, 408 U.S. 471, 479–80, 92 S.Ct. 2593, 2599–

3. We take this occasion to remind the trial courts that findings of fact concerning violations are expressly required in probation revocation proceedings as an element of procedural due process under the United States Constitution. In *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484, 499 (1972), the Supreme Court delineated the following minimal due process requirements applicable to all parole revocation proceedings: (a) [W]ritten notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) *a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.* [Emphasis added.] The standards enunciated in *Brewer* for parole revocation proceedings were extended to probation revocation proceedings in *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656, 661–62 (1973).

4. Nothing in the record indicates that mere consumption of any quantity of alcohol would necessarily lead to termination of a participant from an alcohol rehabilitation program such as the Salvation Army's Clitheroe Center. To the contrary, testimony at Rich's revocation hearing indicated that, before Rich left the Salva-

tion Army program, his counselors believed that he was backsliding to a certain degree and, on that basis, required him to participate in a more intensive course of counselling. The inference raised by this testimony is that at least some degree of leeway or flexibility was built into the Salvation Army's program, and that temporary backsliding by individual participants was anticipated and addressed within the structure of the program. It would thus appear that a single episode of drinking would not necessarily lead to termination of an individual's participation in the program. We cannot conclude that the special condition of probation required Rich to adhere to a standard of "participation" more stringent than the standard imposed by the Salvation Army's program, in which he was participating when originally sentenced.

5. We are aware that an appellate court may sustain the ruling of a trial court based on any appropriate legal theory, even if the theory was not considered by the trial court. *See, e.g., McGee v. State*, 614 P.2d 800, 805–06 n.10 (Alaska 1980); *Rutherford v. State*, 605 P.2d 16, 21 n.12 (Alaska 1979). However, the sufficiency of the evidence to establish a violation of probation is, in the context of this case, a factual, and not a legal matter, and it would be inappropriate for this court to affirm the superior court based on an independent evaluation of factual issues not considered or ruled on below.

2600, 33 L.Ed.2d 484 (1972); *Trumbly v. State*, 515 P.2d 707, 709 (Alaska 1973). The first phase involves determination of whether a condition of probation has in fact been violated. The second phase is reached only if a violation has been found, and it requires a decision as to what appropriate action should be taken by the court in light of the violation. *Id.* Thus, it is well settled that revocation of probation and imposition of a sentence of imprisonment does not flow automatically from the finding of a violation. Rather, an independent showing of good cause must exist to justify the revocation. As the Alaska Supreme Court has stated:

> The requirement that probation revocation follow after a showing of 'good cause' requires the trial judge to find that continuation of probationary status would be at odds with the need to protect society and society's interest in the probationer's rehabilitation. Revocation should follow violation of a condition of probation when that violation indicates that the corrective aims of probation cannot be achieved.

*Trumbly v. State*, 515 P.2d at 709 (footnotes omitted). The requirement of an independent determination of good cause for revocation of probation applies to cases involving suspended impositions of sentence under AS 12.55.080 and AS 12.55.085(a) as well as to cases involving suspended executions of sentence under AS 12.55.080. *Holton v. State*, 602 P.2d 1228, 1238–39 (Alaska 1979); *Alexander v. State*, 578 P.2d 591, 593 (Alaska 1978). In all cases, the state bears the burden of proving, by a preponderance of the evidence, both the fact that a condition of probation has been violated and the ex-

istence of good cause for revocation of probation and imposition of a sentence of imprisonment. *Holton v. State*, 602 P.2d at 1238.

In the present case, the state presented no evidence whatsoever to meet its burden of showing that continuation of Rich's probation would be inconsistent with the need to protect society and to achieve the goal of rehabilitation. Furthermore, there is no indication that the superior court gave any consideration to the question of good cause for revocation.[6] Upon concluding that Rich had violated the special condition of his probation, the court proceeded summarily to revoke Rich's probation and to impose a one-year sentence of imprisonment.

■ We have examined the record of Rich's original sentencing proceeding, at which the imposition of sentence was suspended, as well as the record of his revocation hearing, and we find nothing that could conceivably justify dispensing with the requirement of an independent examination of the issue of good cause for revocation once Rich's violation was established. We therefore conclude that revocation of Rich's probation and imposition of a one-year sentence of imprisonment was contrary to the requirements of constitutional due process.[7]

Accordingly, the superior court's order revoking probation must be vacated, and this case must be remanded with instructions to reevaluate the totality of the evidence and, in the event a violation is found, to enter appropriate findings in conformity with the views expressed in this opinion. Upon a finding of violation, the superior court should, further, give separate consideration

---

**6.** While it has been held that an independent showing of good cause for revocation need not be made in cases where the violation consists of the commission of a separate criminal offense, the violation in the present case did not consist of a separate offense. *See Alexander v. State*, 578 P.2d at 593; *State v. DeVoe*, 560 P.2d 12, 15 (Alaska 1977).

**7.** We further note that, in sentencing Rich to a maximum, one-year term of imprisonment, the court failed to address any of the sentencing goals set forth in *State v. Chaney*, 477 P.2d 441,

444 (Alaska 1970); nor, for that matter, did Judge Carlson make any effort to explain or justify the sentence that he imposed. The record of the proceedings of August 11, 1980, when imposition of Rich's sentence was suspended, is similarly devoid of any sentencing explanation. If, upon remand, good cause for revocation of Rich's probation is found and a sentence of incarceration is imposed, the superior court should bear in mind the need for a full explanation of its sentencing decision, in light of the *Chaney* criteria.

to the question whether good cause exists for revocation of Rich's probation, pursuant to the requirements of *Trumbly v. State,* 515 P.2d at 709.

REVERSED and REMANDED.