*Notice:* This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| GLEN ALSWORTH, SR. and LORENE "SUE" ANELON, | Supreme Court No. S-14978 |
| Petitioners, | Superior Court No. 3DI-12-00059 CI |
| v. | O P I N I O N |
| VICTOR SEYBERT, JOHN HOLMAN, KIMBERLY WILLIAMS, GEORGE G. JACKO, and RICK DELKITTIE, SR., | No. 6900 – April 25, 2014 |
| Respondents. | |

Petition for Review from the Superior Court of the State of Alaska, Third Judicial District, Dillingham, Steve W. Cole, Judge.

Appearances: Rebecca J. Hozubin and Michael A. Moberly, Law Office of Hozubin & Moberly, Anchorage, for Petitioners. Timothy A. McKeever and Scott Kendall, Holmes Weddle & Barcott, P.C., Anchorage, for Respondents.

Before: Winfree, Stowers, and Bolger, Justices, and Matthews and Eastaugh, Senior Justices.* [Fabe, Chief Justice, and Maassen, Justice, not participating.]

WINFREE, Justice.

---

\*     Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

## I. INTRODUCTION

A group of citizens sued two borough assembly members, alleging various violations of borough and state conflict of interest laws and the common law conflict of interest doctrine. After the borough took official action facilitating the assembly members' defense, the citizens moved to enjoin the assembly members from using their official positions to defend the lawsuit or pursue personal financial gain. The superior court granted a preliminary injunction under the balance of hardships standard, concluding that the citizens faced the possibility of irreparable harm if the injunction were not granted and that the assembly members were adequately protected by the injunction. The injunction barred the assembly members from taking various actions in their official capacities, including speaking about a local mining project.

The assembly members filed a petition for review, which we granted. They argue, *inter alia*, that the superior court applied the wrong preliminary injunction standard and that the injunction violates their free speech rights. We agree. The court should have applied the probable success on the merits standard because the injunction does not adequately protect the assembly members, and the injunction imposes an unconstitutional prior restraint on speech. Shortly after oral argument, we vacated the portion of the preliminary injunction barring the assembly members from taking certain official acts or speaking about the mining project. We now vacate the injunction in full.

## II. FACTS AND PROCEEDINGS

### A. Facts[1]

Petitioner Glen Alsworth, Sr. is the Lake and Peninsula Borough (Borough)

---

[1] We base our fact recitation on the superior court's factual findings, in turn based primarily on unauthenticated documents attached to Respondents' unverified superior court complaint. Because no one contests these facts on appeal, we assume them to be accurate.

Mayor and, as such, is a voting member of the Borough Assembly. Alsworth owns and operates Lake Clark Air, an air taxi business serving the Bristol Bay region. Lake Clark Air has received considerable business from the Borough, the Borough's School District (School District), and Pebble Limited Partnership;[2] the latter two entities are Lake Clark Air's largest revenue sources. Alsworth also owns and operates The Farm Lodge, which has received income from the School District and Pebble Limited Partnership.

Petitioner Lorene "Sue" Anelon was, during all times relevant to the complaint in this case, a voting member of the Borough Assembly. Anelon lost her reelection bid in November 2012 and no longer is on the Assembly. Anelon has been employed by Iliamna Development Corporation since at least 2006. Iliamna Development Corporation's primary client is Pebble Limited Partnership.

The Respondents are registered voters in the Borough. Respondent Victor Seybert is also a voting member of the Borough Assembly. We refer to the Respondents collectively as "Seybert."

The Borough Assembly approves the Borough's and the School District's annual budgets. The Assembly, during Alsworth's and Anelon's tenures, enacted resolutions supporting Pebble Mine's development and subleasing Borough property to Northern Dynasty Mines, the parent company of Pebble Limited Partnership. On at least one occasion, Alsworth gave a speech, ostensibly in his official capacity as Mayor, advocating for Pebble Mine.

B. Proceedings

Seybert filed the present lawsuit against Alsworth and Anelon in May 2012. In an unverified complaint, to which several hundred pages of unauthenticated

---

[2] We refer to Pebble Limited Partnership's current mineral exploration in the Borough as Pebble Mine.

documents were attached, Seybert alleged Alsworth and Anelon: (1) violated AS 39.50.090,[3] Lake and Peninsula Borough (L&PB) Code § 2.20.090,[4] L&PB Charter § 15.01,[5] and the common law conflict of interest doctrine[6] by participating in Assembly decisions from which they benefit directly and using their official positions to promote

---

[3] AS 39.50.090(a) provides in relevant part:

> A public official may not use the official position or office for the primary purpose of obtaining personal financial gain or financial gain for a spouse, dependent child, mother, father, or business with which the official is associated or in which the official owns stock.

AS 39.50.100(a) provides a private right of action to enforce the conflict of interest statute: "A qualified Alaska voter may bring a civil action to enforce any of the sections of this chapter."

[4] L&PB Code § 2.20.090 provides, in relevant part:

> A member of the assembly shall declare a substantial financial interest he or she has in an official action and ask to be excused from a vote on the matter. The presiding officer shall rule on the request for abstention (excusal). The decision of the presiding officer on the request may be overridden by the majority vote of the assembly.

[5] L&PB Charter § 15.01(A) provides, in relevant part: "Prohibition. No elected official may vote on any question on which he has a substantial financial interest."

[6] *See Carney v. State Bd. of Fisheries*, 785 P.2d 544, 547-49 (Alaska 1990) (applying common law conflict of interest doctrine from *Marsh v. Town of Hanover*, 313 A.2d 411, 414 (N.H. 1973)). Unlike AS 39.50.090, which focuses on a public official's intent, a common law conflict of interest exists "where a potential exists for a public officer to influence the outcome of a matter in which he has a direct personal and pecuniary interest," regardless of the official's intent. *Marsh*, 313 A.2d at 414; *accord Carney*, 785 P.2d at 548.

Pebble Mine; and (2) violated AS 39.50.020 and .030[7] by failing to properly report gifts and income. Seybert sought various forms of injunctive and legal relief. The Borough's attorney entered an appearance and filed an answer for Alsworth and Anelon in early June.

Sometime after the lawsuit was filed, an unsigned "open letter" on official Borough letterhead was mailed to Borough residents refuting the claims against Alsworth and Anelon. The Borough Assembly did not authorize the letter. Shortly thereafter, the Borough Assembly announced it would hold a June 12 vote on Resolution 12-09 to undertake Alsworth and Anelon's legal defense. The Resolution set forth the Borough's rationale in providing the defense: (1) "the Borough [did] not believe that the allegations set out in the Complaint [were] true"; (2) the Alaska Municipal League Joint Insurance Association (AMLJIA) had denied Alsworth and Anelon coverage for the lawsuit; and (3) the financial burden "cases of this kind" impose on assembly members "is so onerous and burdensome that it is highly likely that the prospect of having to defend themselves against these kinds of claims will deter qualified, competent persons [from] serving as Borough Assembly members."

On June 11 Seybert filed a motion for a temporary restraining order and preliminary injunction, requesting expedited consideration of the motion in advance of the Assembly vote on the Resolution. The motion recited the complaint's allegations and cited the open letter, use of the Borough attorney, and the upcoming Assembly vote on Resolution 12-09 as evidence that Alsworth and Anelon were using Borough resources for personal gain. Seybert asked the court to enjoin Alsworth and Anelon from: (1) authorizing, approving, accepting, or using any Borough resources to defend against

---

[7] AS 39.50.020(a) provides, in relevant part: "A public official . . . shall file a statement giving income sources and business interests, under oath and on penalty of perjury . . . ." AS 39.50.030 specifies the statement's required contents.

the current lawsuit or to investigate, attack, or question the allegations or plaintiffs in the lawsuit; (2) speaking in favor of Pebble Mine while acting in an official capacity, or taking any official action against those who oppose Pebble Mine; (3) voting or failing to declare a conflict of interest when any matters come before the Borough Assembly related to the lawsuit; and (4) voting, taking official action, or failing to declare a conflict of interest on matters in which Alsworth or Anelon has a significant financial interest.

The superior court did not rule on the motion before the Assembly voted to approve Resolution 12-09 on June 12. Seybert filed a supplemental memorandum on June 13 expressing concern that the "invalid" Resolution would facilitate Alsworth and Anelon's misuse of Borough resources.[8] Alsworth and Anelon, proceeding with new counsel retained by the Borough, opposed the temporary restraining order and preliminary injunction on June 20. They argued: (1) the claim was not properly before the court because the Borough had not been joined under Alaska Civil Rule 19(a); (2) Seybert had not complied with Rule 65's requirement that an applicant file a verified complaint or affidavit proving specific facts in support of a motion for a temporary restraining order or preliminary injunction; (3) Seybert was not likely to succeed on the merits; (4) Seybert had not demonstrated irreparable injury; (5) Seybert unjustifiedly delayed seeking injunctive relief; and (6) the balance of equities and public interest favored abstention.

---

[8]     Seybert, Alsworth, and Anelon recused themselves from voting on Resolution 12-09, leaving only four of the seven Assembly members to vote on the Resolution. Three members voted in favor of the Resolution and one member voted against it. Seybert alleged the Resolution was invalid because state and Borough laws provide that actions of a governing body may be adopted only by "a majority of the total membership of the body"; a majority of the seven-member Assembly requires at least four affirmative votes, and the Resolution garnered only three. AS 29.20.160(d); L&PB Charter § 2.08(E); L&PB Code § 2.08.010(E).

AMLJIA shortly thereafter agreed to fund Alsworth and Anelon's defense, despite continuing to contend that "there [was] no coverage with respect to any of the claims asserted." Alsworth and Anelon asked Seybert to dismiss his motion for a temporary restraining order and preliminary injunction because the Borough no longer would be funding their defense, but Seybert refused. The superior court held a hearing on Seybert's motion on August 20. During arguments, Seybert's counsel announced that Respondent Rick Delkittie, Sr. recently had received an email supporting Alsworth that had been sent from one of Anelon's relatives to an anonymous email list. Alsworth and Anelon's counsel did not address the email claim.

Following the hearing, the superior court issued a written order granting the motion for a preliminary injunction. The court explained that, although Seybert's motion "lacks a 'verified complaint' or affidavit proving specific facts," Rule 65 requires such evidence only for temporary restraining orders, and the court could consider "hundreds of pages of exhibits that were filed with the Complaint" in granting a preliminary injunction.[9] The court specifically found Alsworth had a significant financial interest in

--------

[9] Rule 65(b) allows a court to grant a temporary restraining order without notice to the adverse party "only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition," and (2) the applicant explains why notice should not be required. Rule 65(a) governs preliminary injunctions and makes no reference to affidavits or verified complaints. Our evidentiary standard at the preliminary injunction stage remains an open question, and we decline to determine that standard in this case. *See, e.g.*, *Acevedo v. Burley*, 994 P.2d 389, 393-94 (Alaska 1999) (Eastaugh, J. dissenting) (asserting motion lacking "any affidavit or equivalent document (verified motion or memorandum)" was insufficient to "establish any facts that would have entitled [plaintiff] to an injunction"); *State v. Kluti Kaah Native Vill. of Copper Ctr.*, 831 P.2d 1270, 1273 (Alaska 1992) (noting "single affidavit containing the obviously self-interested statements of a single [plaintiff] . . . cannot establish with any genuine
(continued...)

the Borough's and School District's transportation budgets, and that Alsworth and Anelon had significant financial interests in advancing Pebble Mine's development. The court also found that Resolution 12-09 "was not lawfully enacted" and that, although the court could not bind the Borough, "it has the authority to enjoin both defendants from accepting Borough funds." It concluded that "[a]ny promise or transmittal of Borough funds made for the purpose of convincing [AMLJIA] to reverse its coverage decision regarding this proceeding . . . is invalid and unlawful," and Borough funds could not be transmitted to AMLJIA for the purpose of securing AMLJIA's coverage of Alsworth and Anelon.

The superior court then applied the balance of hardships standard in granting the injunction.[10] The court identified five irreparable harms Seybert would face absent an injunction: (1) use of Borough money to fund Alsworth and Anelon's defense under Resolution 12-09; (2) risk that AMLJIA's coverage would not preclude expenditure of Borough funds under Resolution 12-09; (3) unauthorized use of the

---

[9]    (...continued)
certainty" that plaintiffs would suffer irreparable harm). *But see Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."); Michael J. Lichtenstein, *Settling the Law in the Circuits: Presenting Hearsay Evidence in a Preliminary Injunction Hearing*, 29 AM. J. TRIAL ADVOC. 415 (2005) (explaining several circuits allow use of inadmissible hearsay evidence to support preliminary injunction motions).

[10]    *See State, Div. of Elections v. Metcalfe*, 110 P.3d 976, 978 (Alaska 2005) (explaining balance of hardships standard is applied only when plaintiff faces danger of irreparable harm, opposing party is adequately protected, and plaintiff raises serious and substantial questions going to the merits of the case).

Borough's letterhead to defend the lawsuit and attack the plaintiffs; (4) unauthorized use of the Borough's address and email lists to defend the lawsuit and attack the plaintiffs; and (5) Alsworth's and Anelon's potential failures to fully and timely disclose their incomes in their financial disclosures. The court also found Alsworth and Anelon would be adequately protected because the injunction would only require them "to comply with the law." It thus concluded that the balance of hardships "weigh[ed] heavily in favor of granting plaintiffs' requested preliminary injunction."

The preliminary injunction imposed ten orders:

1. Based on the above Findings of Fact and Conclusions of Law, the plaintiffs' Motion for a Preliminary Injunction is granted, and defendants' [sic] Glen Alsworth Sr. and Lorene "Sue" Anelon are ordered to immediately cease and desist from any and all uses of their official positions in the Lake and Peninsula Borough for personal or financial gain. More specifically, they are enjoined from taking the actions that are set out below.

2. They may not authorize, approve, accept or use any Borough funds or resources to defend against this lawsuit, including (a) the time and efforts of the Lake and Peninsula Borough Attorney, (b) Lake and Peninsula Borough staff, property, equipment, website, letterhead or any other resources, (c) Lake and Peninsula Borough mailing and emailing lists, and (d) any method of mailing, emailing, distribution or publication paid for in whole or in part by the Lake and Peninsula Borough;

3. They may not authorize, approve, accept, or use any Borough funds or resources purportedly appropriated to defend this lawsuit through Borough Resolution #12-09, which this court finds was not lawfully enacted.

4. The defendants may not authorize, approve, accept or use any Borough funds transmitted by the Borough through [AMLJIA] for the specific purpose of securing that entity's agreement to reverse its coverage decision regarding

their defense in this proceeding. They *can* accept AMLJIA funds for their legal fees that do not otherwise fall into that category.

5. They may not use any Borough facilities, property or other resources or staff to investigate, attack or question the allegations in this lawsuit or plaintiffs in this lawsuit.

6. While acting in any official capacity as the Borough Mayor and/or being a member of the Borough Assembly, they may not speak in favor of (or against) or endorse the Pebble Mine Project or any entities with an interest in the success of the Pebble Mine Project or take any official action against those who oppose the Pebble Mine Project and/or related entities.

7. They shall not fail to declare a conflict of interest and/or take official actions when any matters come before the Borough Assembly related to this lawsuit.

8. The defendants shall not fail to declare a conflict of interest and/or take official action on matters in which they have a significant financial interest, including, with regard to Glen Alsworth Sr., the transportation budget of the Lake and Peninsula School District and the transportation budget of the Lake and Peninsula Borough, and for both Mr. Alsworth and Ms. Anelon, any votes relating, directly or indirectly, to the Pebble Mine Project.

9. They may not vote on any matters before the Borough Assembly in which defendants have a significant financial interest, including, with regard to Mr. Alsworth, the transportation budget of the Lake and Peninsula School Board and the transportation budget of the Lake and Peninsula Borough, and for both Mr. Alsworth and Ms. Anelon, any votes relating, directly or indirectly, to the Pebble Mine Project.

6900

10.    They shall not fail to file timely, complete and accurate Public Official Financial Disclosures as required by law.  (Emphasis in original.)

Alsworth and Anelon moved for reconsideration, which the superior court denied.  Alsworth and Anelon then petitioned this court for review, arguing:  (1) the injunction impermissibly restricts their freedom of speech and infringes on their legislative immunity; (2) the superior court erred in applying the balance of hardships preliminary injunction standard because there is no threat of irreparable harm and Alsworth and Anelon are not adequately protected under the injunction; and (3) the superior court erred by finding that the Borough is not an indispensable party.  We granted the petition.

## III.    STANDARD OF REVIEW

Although we "review the issuance of preliminary injunctions for abuse of discretion,"[11] "we review de novo the superior court's legal determinations in issuing the preliminary injunction."[12]  "We apply our independent judgment to constitutional law

---

[11]    *City of Kenai v. Friends of Recreation Ctr., Inc.*, 129 P.3d 452, 455 (Alaska 2006) (citing *Metcalfe*, 110 P.3d at 978).  Under the abuse of discretion standard, " 'an injunction will not be disturbed unless contrary to some rule of equity, or the result of improvident exercise of judicial discretion.' " *Kluti Kaah*, 831 P.2d at 1272 n.4 (quoting *Alaska Pub. Utils. Comm'n v. Greater Anchorage Area Borough*, 534 P.2d 549, 557 (Alaska 1975) (quoting *Prendergast v. N.Y. Tel. Co.*, 262 U.S. 43, 50-51 (1923))); *cf. Friends of Recreation Ctr.*, 129 P.3d at 455 ("We will find an abuse of discretion only when we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling." (quoting *DeSalvo v. Bryant*, 42 P.3d 525, 528 (Alaska 2002)) (internal quotation marks omitted)).

[12]    *Friends of Recreation Ctr.*, 129 P.3d at 455 (citing *People ex rel. Gallo v. Acuna*, 929 P.2d 596, 626 (Cal. 1997)).

issues, and consider precedent, reason, and policy."[13]

## IV. DISCUSSION

### A. The Superior Court Erred In Its Preliminary Injunction Standard.

A plaintiff may obtain a preliminary injunction by meeting either the balance of hardships or the probable success on the merits standard.[14] The balance of hardships standard requires balancing the harm the plaintiff will suffer without the injunction against the harm the injunction will impose on the defendant.[15] A preliminary injunction is warranted under that standard when three factors are present: "(1) the plaintiff must be faced with irreparable harm; (2) the opposing party must be adequately protected; and (3) the plaintiff must raise serious and substantial questions going to the merits of the case; that is, the issues raised cannot be frivolous or obviously without merit."[16] Our rationale in adopting the balance of hardships rule in *A.J. Industries* demonstrates that a court is to assume the plaintiff ultimately will prevail when assessing the irreparable harm to the plaintiff absent an injunction, and to assume the defendant ultimately will prevail when assessing the harm to the defendant from the injunction:

> "Where the questions presented by an application for an interlocutory injunction are grave, and the injury to the

---

[13] *Bridges v. Banner Health*, 201 P.3d 484, 489 (Alaska 2008) (citing *Alaska Pub. Interest Research Grp. v. State*, 167 P.3d 27, 34 (Alaska 2007); *Alaska Legislative Council v. Knowles*, 21 P.3d 367, 370 (Alaska 2001)).

[14] *A.J. Indus., Inc. v. Alaska Pub. Serv. Comm'n*, 470 P.2d 537, 540 (Alaska 1970), *modified in other respects*, 483 P.2d 198 (Alaska 1971). We adopted the balance of hardships standard as an alternative to the rule "requiring a clear showing of probable success" on the merits. *Id.*

[15] *Id.*

[16] *Kluti Kaah*, 831 P.2d at 1273 (quoting *Messerli v. Dep't of Natural Res.*, 768 P.2d 1112, 1122 (Alaska 1989)) (internal quotation marks omitted).

moving party will be certain and irreparable, *if the application be denied and the final decree be in his favor*, while if the injunction be granted the injury to the opposing party, *even if the final decree be in his favor*, will be inconsiderable, or may be adequately indemnified by a bond, the injunction usually will be granted."[17]

Accordingly, the balance of hardships standard

applies only where the injury which will result from the temporary restraining order or the preliminary injunction can be indemnified by a bond or where it is relatively slight in comparison to the injury which the person seeking the injunction will suffer if the injunction is not granted. Where the injury which will result from the temporary restraining order or the preliminary injunction is not inconsiderable and may not be adequately indemnified by a bond, a showing of probable success on the merits is required . . . .[18]

The superior court concluded in this case that the balance of hardships militated in favor of granting the preliminary injunction. The court identified five forms of irreparable harm Seybert would suffer if the injunction did not issue. Alsworth and Anelon argue the superior court's irreparable harm finding was in error, but we do not need to address this issue because we decide this case on the "adequately protected" prong.

The superior court summarily concluded the injunction would not cause unnecessary harm to Alsworth or Anelon: "The defendants are adequately protected because plaintiffs are essentially asking only that defendants be required to comply with

---

[17]      470 P.2d at 540 (emphasis added) (quoting *Ohio Oil Co. v. Conway*, 279 U.S. 813, 815 (1929)).

[18]      *State v. United Cook Inlet Drift Ass'n*, 815 P.2d 378, 378-79 (Alaska 1991) (citations omitted) (citing *A.J. Indus.*, 470 P.2d at 540; *Alaska Pub. Utils. Comm'n v. Greater Anchorage Area Borough*, 534 P.2d 549, 554 (Alaska 1975)).

the law.  The court does not see how any harm could occur from ordering them to comply with laws that already govern them."[19]  Alsworth and Anelon assert three harms from the injunction:  (1) the injunction reduces the number of members available to conduct Borough business because Alsworth and Anelon are prohibited from taking official actions on matters related to Pebble Mine, the Borough budget, and the School District budget; (2) the injunction interferes with Alsworth's and Anelon's abilities to perform their functions as elected officials to the detriment of voters' expectations; and (3) the injunction hinders free debate within the Borough by limiting the subjects on which Alsworth and Anelon may speak.  Seybert counters that the preliminary injunction does not interfere with official duties or free debate because state and Borough laws already prohibit the enjoined actions.

The superior court erred by considering the injunction's harms to Alsworth and Anelon under the assumption that the enjoined actions will ultimately be found to be illegal.[20]  We addressed an analogous situation in *State v. Kluti Kaah Native Village of Copper Center*, where the plaintiff sought an injunction ordering the State to comply with the law and refrain from enforcing "an illegal regulation."[21]  We held the superior court erred in its "adequately protected" analysis because it failed to consider the

---

[19]     The superior court did not expressly conclude Seybert had raised "serious and substantial questions going to the merits of the case" — the third prong of the balance of hardships standard — but we infer the superior court so concluded because the issues Seybert had raised are not "frivolous or obviously without merit."  *See Kluti Kaah*, 831 P.2d at 1273 (quoting *Messerli*, 768 P.2d at 1122) (internal quotation marks omitted).

[20]     *Cf. A.J. Indus.*, 470 P.2d at 540 (quoting *Ohio Oil Co.*, 279 U.S. at 815) (noting "adequately protected" inquiry should presume defendant will ultimately prevail).

[21]     831 P.2d at 1271.

injunction's interference with the State's "role as protector of the resource" and with the interests of other subsistence users, notwithstanding the alleged illegality of the State's actions.[22] The proper inquiry under the balance of hardships standard is not whether the injunction merely orders a defendant to comply with the law, but whether, assuming the defendant will ultimately prevail, "the injury which will result from the . . . injunction can be indemnified by a bond or . . . is relatively slight in comparison to the injury which the person seeking the injunction will suffer if the injunction is not granted."[23]

Enjoining the listed actions — speaking about Pebble Mine, conducting official Borough business, accepting Borough money for legal defense — imposes serious harm on Alsworth and Anelon.[24] Alsworth's and Anelon's injuries are not "relatively slight in comparison"[25] to Seybert's alleged injury in the absence of the injunction, nor can they be indemnified by a bond. Our statement in an earlier case rings true here: "issuance of this injunction is a zero-sum event, where one party will invariably see unmitigated harm to its interests."[26] The superior court should have

---

[22]     *Id.* at 1273.

[23]     *United Cook Inlet Drift Ass'n*, 815 P.2d at 378-79 (citing *A.J. Indus.*, 470 P.2d at 540; *Alaska Pub. Utils. Comm'n*, 534 P.2d at 554).

[24]     We consider the injunction's impact on Anelon as it would have applied at the time the superior court issued its order, although the injunction may no longer have any practical impact on Anelon due to her reelection defeat. We do not need to decide the relevance of the injunction's current impact on Anelon because we vacate the injunction in full.

[25]     *United Cook Inlet Drift Ass'n*, 815 P.2d at 379.

[26]     *State, Div. of Elections v. Metcalfe*, 110 P.3d 976, 979 (Alaska 2005).

applied the probable success on the merits test, not the balance of hardships test.[27] Because the superior court applied the wrong standard, we vacate the preliminary injunction in full.[28]

B.   **Paragraph Six Of The Preliminary Injunction Is A Prior Restraint On Speech In Violation Of Article I, Section 5 Of The Alaska Constitution.**

Even though we vacate the injunction in full, we explain our earlier order vacating the portion of the preliminary injunction barring certain official action and speech by additionally holding that the injunction's restriction on Alsworth's and Anelon's speech on Pebble Mine is an impermissible prior restraint on speech. Paragraph Six of the preliminary injunction prohibits Alsworth and Anelon from "speak[ing] in favor of (or against) or endors[ing] the Pebble Mine Project or any entities with an interest in the success of the Pebble Mine Project or tak[ing] any official action against those who oppose the Pebble Mine Project and/or related entities." Alsworth and Anelon argue these prohibitions violate their rights to freedom of speech under article I, section 5 of the Alaska Constitution. Seybert counters that: (1) elected officials have no protected right to expression in their official capacities; (2) Alsworth's and Anelon's speech about Pebble Mine does not qualify as protected speech; (3) the injunction is a valid restriction on speech because it is merely enforcing laws that pass intermediate scrutiny; and (4) Alsworth waived his speech rights by participating in the enactment of Borough laws restricting the speech at issue.

---

[27]   *See id.*

[28]   We do not consider whether the superior court could have granted this injunction under the probable success on the merits standard. *See State v. Kluti Kaah Native Vill. of Copper Ctr.*, 831 P.2d 1270, 1275 (Alaska 1992) (concluding vacatur is appropriate remedy when superior court applies incorrect preliminary injunction standard).

1. **Paragraph Six imposes an impermissible prior restraint on speech**.

The First Amendment broadly protects the "freedom of expression upon public questions."[29] "[T]he Alaska Constitution protects free speech at least as broad[ly] as the U.S. Constitution and in a more explicit and direct manner."[30]

Preliminary injunctions against speech are prior restraints,[31] and "[a]ny system of prior restraints of expression . . . bear[s] a heavy presumption against its constitutional validity."[32] This is true even when the speech is alleged to violate an otherwise constitutional law.[33] Preliminary injunctions are almost always held to be unconstitutional burdens on speech because they involve restraints on speech before the

---

[29] *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964).

[30] *Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 198 (Alaska 2007) (alteration in original) (footnotes omitted) (quoting *Vogler v. Miller*, 651 P.2d 1, 3 (Alaska 1982); *Messerli v. State*, 626 P.2d 81, 83 (Alaska 1980)) (internal quotation marks omitted).

[31] *See, e.g.*, *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 66-68 (1989); *Vance v. Universal Amusement Co.*, 445 U.S. 308, 316 (1980) (per curiam); *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419-20 (1971); *Auburn Police Union v. Carpenter*, 8 F.3d 886, 903 (1st Cir. 1993).

[32] *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *see also Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390 (1973) ("The special vice of a prior restraint is that communication will be suppressed, either directly or by inducing excessive caution in the speaker, before an adequate determination that it is unprotected by the First Amendment."); *Kritz*, 170 P.3d at 205 ("Both the federal and Alaska Constitutions look with disfavor on broad-based prior restraint rules . . . .").

[33] *Fort Wayne Books*, 489 U.S. at 66 ("[O]ur cases firmly hold that mere probable cause to believe a legal violation has transpired is not adequate to remove books or films from circulation [via preliminary judgment].").

speech has been fully adjudged to not be constitutionally protected.[34] A preliminary injunction barring speech may be permissible only if the trial court has fully adjudicated and determined that the affected speech is not constitutionally protected.[35]

Nothing in the record indicates that the superior court evaluated, much less conclusively determined, whether Alsworth's or Anelon's speech concerning Pebble Mine is unprotected under the Alaska Constitution. Paragraph Six thus imposes an unconstitutional prior restraint on Alsworth's and Anelon's speech in violation of their rights under article I, section 5 of the Alaska Constitution and must be vacated.[36]

### 2. Alsworth's and Anelon's official speech is not unprotected simply because they are elected officials.

Seybert argues Alsworth's and Anelon's speech about Pebble Mine is not protected because "[t]he protected speech rights of elected public officials and public employees under the First Amendment and the Alaska Constitution are limited to speech

---

[34] *See, e.g.*, *id.* at 66-68; *Vance*, 445 U.S. at 316 (expressing concern that a defendant "would be required to obey such an order pending review of its merits and would be subject to contempt proceedings even if the [speech] is ultimately found to be [protected]"). *See generally*, Mark A. Lemley & Eugene Volokh, *Freedom of Speech and Injunctions in Intellectual Property Cases*, 48 DUKE L. J. 147, 169-180, 199-210 (1998). Permanent injunctions, on the other hand, may be valid restrictions on speech because "the order will not have gone into effect before [the court's] final determination that the actions of [the defendant are] unprotected." *Pittsburgh Press Co.*, 413 U.S. at 390.

[35] *San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters*, 125 F.3d 1230, 1239 (9th Cir. 1997). *But see id.* at 1240 (Kozinski, J., dissenting) (noting the case "is the first ever (so far as I am aware) to uphold a preliminary injunction against speech covered by *Sullivan*").

[36] The U.S. Supreme Court has suggested that a preliminary injunction against speech might be permissible if special procedural safeguards are in place to ensure that no protected speech is enjoined, but the injunction in this case contains no safeguards whatsoever. *Vance*, 445 U.S. at 317.

on matters of legitimate public concern"; and "any speech by Alsworth in his official capacity regarding the Pebble Project is speech on a topic of personal interest," not public concern. Seybert's argument is based on a line of cases holding public employees do not enjoy broad First Amendment protection against employer discipline when they speak on matters of private concern during the performance of their official duties.[37] Seybert urges this court to extend the rule to elected officials' speech. While a few trial courts have extended the principle to limit elected officials' speech rights,[38] neither the U.S. Supreme Court nor this court has done so, and other courts have expressly declined the invitation.[39] Limiting elected officials' speech protections runs counter to the jurisprudence of the U.S. Supreme Court and this court. The U.S. Supreme Court held in *Bond v. Floyd* that legislators' First Amendment rights are as broad as those of private

---

[37] *See, e.g.*, *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *Connick v. Myers*, 461 U.S. 138, 142 (1983); *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 568 (1968); *Wickwire v. State*, 725 P.2d 695, 700-03 (Alaska 1986); *State v. Haley*, 687 P.2d 305, 311-14 (Alaska 1984).

[38] *See, e.g.*, *Hartman v. Register*, No. 1:06-CV-33, 2007 WL 915193, at *6 (S.D. Ohio Mar. 26, 2007); *Hogan v. Twp. of Haddon*, No. 04-2036 (JBS), 2006 WL 3490353, at *6 (D.N.J. Dec. 1, 2006).

[39] *See Siefert v. Alexander*, 608 F.3d 974, 991 (7th Cir. 2010) (Rovner, J., dissenting in part) ("Neither this court nor the Supreme Court, however, has ever held that these decisions limiting the speech of public employees can be applied to elected officials' speech, including the speech of elected judges."); *Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 202-04 (Alaska 2007) (applying *Pickering* and *Connick* to public employee speech, but not to elected official speech); *see also Rangra v. Brown*, 566 F.3d 515, 522 (5th Cir. 2009) ("The district court's premise that the First Amendment's protection of elected officials' speech is limited just as it is for the speech of public employees, however, is incorrect."), *vacated as moot*, 584 F.3d 206 (5th Cir. 2009) (en banc).

citizens.[40] This court held similarly in *Thoma v. Hickel*, concluding that the governor enjoys the same speech rights under the U.S. and Alaska constitutions as do his critics in the citizenry.[41] Alsworth and Anelon enjoy no less speech protection as elected officials than do private citizens under article I, section 5 of the Alaska Constitution.[42] Because Alsworth's and Anelon's positions as elected officials do not render their speech regarding Pebble Mine unprotected, the preliminary injunction amounts to a prior restraint on speech not yet adjudged to be unprotected.[43]

## V. CONCLUSION

Based on the foregoing,[44] we REVERSE the superior court's preliminary injunction.

---

[40] 385 U.S. 116, 136-37 (1966).

[41] 947 P.2d 816, 821, 824 (Alaska 1997).

[42] Seybert offers no legal authority establishing that voting for speech-restricting laws waives one's speech rights; accordingly, his argument that Alsworth waived his speech right by helping to enact the Borough's conflict of interest laws fails.

[43] We also note that enjoining the Borough Mayor from speaking in an official capacity on a subject the Borough has officially endorsed — Pebble Mine — seems to lack any basis whatsoever.

[44] Because we vacate the injunction based on the incorrect application of the preliminary injunction standard and on free speech grounds, we do not address Alsworth and Anelon's additional arguments that the injunction violates their legislative immunity and that the superior court erred by not joining the Borough as an indispensable party.