*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| VICTOR SEYBERT, JOHN HOLMAN, KIMBERLY WILLIAMS, GEORGE G. JACKO, and RICK DELKITTIE SR., | ) ) ) ) | Supreme Court No. S-15600 |
| | ) | Superior Court No. 3DI-12-00059 CI |
| Petitioners, | ) ) | O P I N I O N |
| v. | ) ) | No. 7079 – February 5, 2016 |
| GLEN ALSWORTH SR., and LORENE "SUE" ANELON, | ) ) ) | |
| Respondents. | ) ) | |

Petition for Review from the Superior Court of the State of Alaska, Third Judicial District, Dillingham, Steve W. Cole, Judge.

Appearances: Timothy A. McKeever, Holmes Weddle & Barcott, Anchorage, for Petitioners. Rebecca J. Hozubin, Hozubin, Moberly, Lynch & Associates, Anchorage, for Respondents.

Before: Stowers, Chief Justice, Winfree and Bolger, Justices. [Fabe and Maassen, Justices, not participating.]

BOLGER, Justice.

## I.    INTRODUCTION

A group of Lake and Peninsula Borough voters filed suit against two local elected officials, alleging various violations of state and local conflict of interest laws and

the common law conflict of interest doctrine. The elected officials moved for summary judgment on the ground that the voters failed to exhaust administrative remedies. The superior court granted the motion and stayed the proceedings so that the Alaska Public Offices Commission (APOC) could review several of the voters' claims. In doing so the court relied in part on case law involving the separate doctrine of primary jurisdiction, which allows a court to stay proceedings to give the relevant administrative agency an initial pass at the claims. We reverse the superior court's order because the voters were not required to exhaust administrative remedies and because the order staying the proceedings cannot be affirmed on independent grounds.

## II. FACTS AND PROCEEDINGS

The petitioners — Victor Seybert, John Holman, Kimberly Williams, George G. Jacko, and Rick Delkittie Sr. (collectively "Seybert") — are registered voters in the Lake and Peninsula Borough and jointly sued Glen Alsworth, Sr. and Lorene "Sue" Anelon. Alsworth has served as the borough mayor since the borough's formation in 1989 and is a voting member of the borough assembly. Anelon was a voting member of the borough assembly during the time period relevant to Seybert's complaint, but she lost her reelection bid in November 2012.

Seybert filed the present suit against Alsworth and Anelon in May 2012. Seybert alleged numerous acts and omissions by Alsworth and Anelon while acting as elected borough officials, including failing to disclose conflicts of interest with their private business enterprises, taking action in their official roles related to matters on which they had personal and business interests, and failing to fully and properly complete required financial disclosures.[1] Based on these allegations, Seybert's amended

---

[1] For a more detailed recitation of Seybert's allegations, see our prior opinion in this case, *Alsworth v. Seybert*, 323 P.3d 47, 50-54 (Alaska 2014).

complaint included five counts: counts one through three alleged violations of Alaska's conflict of interest laws codified at AS 39.50 and the implementing regulations.[2] Count four alleged violations of the borough charter and code[3] and the common law conflict of interest doctrine.[4] And count five alleged violations of Alaska's statutory prohibition against "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce."[5] Seybert sought various remedies including a court order enjoining the officials from further violations of these laws; forcing them to forfeit

---

[2] *See* AS 39.50.020, .030 (requiring public officials to file financial disclosure forms and outlining certain details of those reporting requirements); AS 39.50.060 (providing penalties for not disclosing required information); AS 39.50.090 (prohibiting a public official from "us[ing] the official position or office for the primary purpose of obtaining personal financial gain or financial gain for a spouse, dependent child, mother, father, or business with which the official is associated or in which the official owns stock"); 2 Alaska Administrative Code (AAC) 50.680–.700 (2011) (outlining certain details of the statutory reporting requirements codified at AS 39.50).

[3] *See* Lake & Peninsula Borough (L&PB) Charter art. 15, § 15.01(A) ("No elected [borough] official may vote on any question on which he has a substantial financial interest."); L&PB Code 02.20.090 ("A member of the [borough] assembly shall declare a substantial financial interest he or she has in an official action and ask to be excused from a vote on the matter.").

[4] *See Griswold v. City of Homer*, 925 P.2d 1015, 1026 (Alaska 1996) ("Under common law [conflict of interest doctrine], 'the focus . . . [is] on the relationship between the public official's financial interest and the possible result of the official's action, regardless of the official's intent.' " (second and third alterations in original) (quoting *Carney v. State, Bd. of Fisheries*, 785 P.2d 544, 548 (Alaska 1990))); *see also Carney*, 785 P.2d at 548 (concluding that AS 39.50.090 does not abrogate the common law conflict of interest doctrine).

[5] *See* AS 45.50.471.

their offices; voiding all unlawful transactions; compelling them to disgorge all monies received through such transactions; and requiring them to pay penalties and fines under AS 30.50, attorney's fees, and punitive damages.

Alsworth and Anelon moved for summary judgment on the grounds that Seybert failed to exhaust administrative remedies.[6] The superior court granted summary judgment in part, finding that: (1) the exhaustion doctrine applied to claims brought under AS 39.50 and the associated regulations; (2) Seybert had not exhausted administrative remedies; and (3) this failure to exhaust administrative remedies was not excused. Accordingly the court granted summary judgment for Alsworth and Anelon with respect to counts one through three. The superior court also concluded that Seybert was not required to exhaust administrative remedies with respect to counts four and five, but it noted that those counts rested on "a similar enough factual predicate that judicial economy would be best served by hearing all counts at once after APOC has the opportunity to review the AS 39.50 and 2 AAC 50 allegations." The court invited further briefing from the parties as to "whether these remaining counts should be stayed or proceed to trial."

Seybert moved for reconsideration of the grant of summary judgment, arguing that, because AS 39.50.100 expressly provides for a private right of action to enforce the statutes at issue, exhaustion of administrative remedies could not be required. Seybert further noted that in concluding exhaustion was required, the superior court relied primarily upon case law involving the doctrine of primary jurisdiction under which

---

[6] Prior to this motion for summary judgment, the superior court issued a preliminary injunction imposing various restrictions on Alsworth's and Anelon's use of borough resources for their legal defense and barring them from speaking about the Pebble Mine project in their official capacities. *Alsworth*, 323 P.3d at 52-53. We granted a petition for review and vacated that injunction in *Alsworth v. Seybert*. *Id*. at 54-55.

"a court may, in appropriate cases, stay or dismiss pending litigation so as to enable a proper agency to initially pass upon an aspect of the case calling for administrative expertise."[7] Seybert argued that this doctrine was inapplicable because APOC lacked " 'exclusive' jurisdiction" over enforcement of AS 39.50.[8] Seybert also claimed that the superior court erred in finding that "robust discovery" would be available through the APOC process and argued that "the remedies [he] requested" were unavailable through administrative avenues.[9]

The superior court summarily denied Seybert's motion for reconsideration, and Seybert filed a petition for interlocutory review with this court. In response we issued an order requesting clarification from the superior court regarding whether, by granting summary judgment, it "intended to dismiss counts one, two, and three, or whether [it] intended to stay these counts pending referral of [those] claims to [APOC]."[10] The superior court clarified that it "intended to . . . *stay[]* [counts one

---

[7]     *See Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1032 (Alaska 1972), *overruled on other grounds by City & Borough of Juneau v. Thibodeau,* 595 P.2d 626 (Alaska 1979).

[8]     *See id*. at 1032-33 ("In order for such a judicial reference to be valid, at least some part of the case must fall within the exclusive jurisdiction of the administrative agency.").

[9]     Seybert also submitted an affidavit from his counsel of record, Timothy A. McKeever, attesting that he had "handled a large number of matters before [APOC]" and detailing various limitations on the available administrative remedies.

[10]     *Seybert v. Alsworth*, No. S-15600 (Alaska Supreme Court Order, Sept. 4, 2014).

through three], rather than dismiss[] them, so that [it] would retain the ability to '[hear] all the counts at once after APOC has the opportunity to review the AS 39.50 and 2 AAC 50 allegations.' "[11]

We then granted Seybert's petition for review on the following issues:

(1) whether it was an error of law to rule that exhaustion of administrative remedies was required for the claims under consideration; (2) whether it was an error of law or an abuse of discretion to require the petitioners to bring these claims to [APOC]; and (3) alternatively, whether the superior court's order can be affirmed under the doctrine of primary jurisdiction.

## III.  STANDARD OF REVIEW

"We review summary judgment rulings de novo and may affirm summary judgment on any basis appearing in the record."[12]  The question of whether a litigant is required to exhaust administrative remedies is a legal question that we review de novo.[13] Under the primary jurisdiction doctrine, a superior court enjoys discretion in determining whether to stay or dismiss a claim.[14]  We will affirm on independent grounds not relied on by the superior court only when those grounds are established by the record as a matter of law.[15]

---

[11]     *Seybert v. Alsworth*, No. 3DI-12-59 CI (Alaska Super., Sept. 25, 2014) (order clarifying order granting summary judgment).

[12]     *Angleton v. Cox*, 238 P.3d 610, 614 (Alaska 2010) (citation omitted).

[13]     *Winterrowd v. State, Dep't of Admin., Div. of Motor Vehicles*, 288 P.3d 446, 449 (Alaska 2012).

[14]     *See Matanuska Elec. Ass'n v. Chugach Elec. Ass'n*, 99 P.3d 553, 559-60 (Alaska 2004).

[15]     *See Riley v. Simon*, 790 P.2d 1339, 1343 n.7 (Alaska 1990) ("[A] judgment
(continued...)

## IV. DISCUSSION

### A. It Was An Error For The Superior Court To Conclude That Seybert Was Required To Exhaust Administrative Remedies.

"In general, a party may not seek relief in a judicial forum until that party has exhausted his or her available administrative remedies."[16] Thus if a statute provides administrative remedies, exhaustion generally is required.[17] The statute here provides an administrative remedy for the violations Seybert alleges. Under AS 39.50.055 ("Administrative complaints"), "[a] person may file a written complaint [to APOC] alleging a violation of [AS 39.50] has occurred or is occurring." However the statute also provides for a private right of action to enforce these same provisions. Under AS 39.50.100 ("Enforcement by private citizens"), "[a] qualified Alaska voter may bring a civil action to enforce any of the sections of [AS 39.50]." Under this statutory scheme, requiring a plaintiff to first exhaust administrative remedies would read a significant prerequisite into filing a citizen suit. Because the text of the statute is silent in this regard, we will not infer such a requirement absent some indicia of legislative intent.

Nothing in the legislative history of either AS 39.50.100, the citizen suit provision, or AS 39.50.055, the administrative complaint provision, suggests that the legislature intended to require plaintiffs to exhaust administrative remedies before

---

[15] (...continued)
can be affirmed 'on any basis established by the record, whether or not it was relied on by the trial court or even raised before the trial court.' " (quoting *Demoski v. New*, 737 P.2d 780, 786 (Alaska 1987))); *McGee v. State*, 614 P.2d 800, 805 n.10 (Alaska 1980) ("[A] correct ruling of law by a trial court may be affirmed, regardless of the reasons advanced, if there exist independent grounds which, as a matter of law, support the trial court's conclusion.").

[16] *Winterrowd*, 288 P.3d at 450.

[17] *Id*.

commencing a citizen suit. The citizen suit provision was enacted as part of the 1974 voter initiative that established Alaska's conflict of interest law.[18] The administrative complaint provision was not added until 2008, when the legislature amended the statute to include the language now codified at AS 39.50.055.[19] The legislature enacted the complaint provision in a bill that made several changes to the state's campaign finance, lobbying, and conflict of interest rules.[20] According to a staff person for the bill's sponsor, the bill was aimed at "strengthen[ing] the oversight of Alaska's ethics laws by allowing watchdog agencies more time to receive complaints and properly investigate alleged violations."[21] Accordingly the bill extended the statute of limitations from one to five years for alleged violations of campaign finance rules and from two to five years for alleged violations of legislative ethics rules.[22] It also imposed more stringent requirements for the retention of lobbyist records.[23] The bill also added two other administrative complaint provisions to the statute. Each provision provides that "[a] person may file a written complaint" alleging a violation of the state's lobbying and

---

[18]    1974 Initiative Proposal No. 2, § 1 (1974); *see also Warren v. Thomas*, 568 P.2d 400, 400 (Alaska 1977). We refer to AS 39.50 as Alaska's "conflict of interest" law throughout, although it is now titled the Public Official Financial Disclosure statute. *Grimm v. Wagoner*, 77 P.3d 423, 425 & n.1 (Alaska 2003).

[19]    Ch. 95, § 10, SLA 2008.

[20]    *See* ch. 95, SLA 2008.

[21]    Minutes, H. Fin. Comm. Hearing on H.B. 281, 25th Leg., 2d Sess. 2:33 (Mar. 31, 2008) (testimony of Mike Sica, staff to Rep. Bob Lynn, bill sponsor).

[22]    Ch. 95, §§ 3, 8, SLA 2008 (amending the applicable statute of limitations for violations of AS 15.13 and AS 24.60).

[23]    *Id*. § 4.

legislative ethics rules, respectively, and each includes a five-year statute of limitations.[24] The legislature made only one change to the citizen suit provision: the addition of a five-year statute of limitations consistent with the new administrative remedy sections.[25]

The legislative history of the administrative complaint provision contains no indication that a plaintiff must exhaust administrative remedies before bringing a citizen suit. Instead the House Judiciary Committee discussion about the citizen suit provision supports the contrary view. During that discussion a legislator asked why a citizen would "fil[e] a civil action."[26] Chief Assistant Attorney General Jan DeYoung responded by offering an example of a citizen suit challenging an election that claimed an inaccuracy in a candidate's conflict of interest statement.[27] The legislator then noted that there were "two courses of action available" — "one [that] pertains to the ability of . . . APOC to levy a penalty, and the other [that] pertains to the ability of a person to bring a civil suit."[28] Later in the hearing, another legislator asked DeYoung "whether, if he were to file a complaint and the APOC chose not to act on it, he could then bring a civil action in order to force the APOC to act."[29] DeYoung clarified:

> [T]he action referenced in AS 39.50.100 is a direct action brought by a citizen, and would result in a proceeding in superior court. However, *if* a complaint is filed with the APOC but the complainant is not satisfied with the APOC's

---

[24]     *Id*. §§ 7, 9-10.

[25]     *Id*. § 11.

[26]     Minutes, H. Judiciary Comm. Hearing on H.B. 281, 25th Leg., 2d Sess. 2:52-2:59 (Feb. 8, 2008) (statement of Rep. John Coghill).

[27]     *Id*. (testimony of Jan DeYoung, Chief Assistant Attorney General).

[28]     *Id*. (statement of Rep. John Coghill).

[29]     *Id*. at 3:15-3:19 (statement of Rep. Mike Doogan).

action, there is an *appeal* process available — that would be an appeal into court.[30]

Nothing in the committee's subsequent discussion suggested that the legislature intended to depart from the scheme DeYoung described: *parallel* administrative and judicial remedies from which a plaintiff may elect.

Alsworth and Anelon make several arguments why exhaustion is required notwithstanding the citizen suit provision. First they highlight case law describing the purpose of the exhaustion doctrine as "allow[ing] an administrative agency to perform functions within its special competence"[31] and claim that APOC had the expertise necessary to investigate Seybert's allegations. But the question of whether the allegations fell within the agency's "special competence" would only apply in a much closer case where statutory guidance on the available remedies was absent. Here the legislature clearly provided for a citizen suit to remedy grievances.

Similarly Alsworth and Anelon contend that the citizen suit provision "does not solely occupy the field" and "did not take away the administrative remedies." In particular they highlight APOC's statutory authority to determine fines for the failure to "file a properly completed and certified [conflict of interest] report."[32] While these contentions are true, allowing a party to pursue a private cause of action without exhausting administrative remedies does not "take away" a party's *ability* to file a complaint under AS 39.50.055 or APOC's *ability* to impose fines under AS 39.50.135.

---

[30]   *Id*. (testimony of Jan DeYoung, Chief Assistant Attorney General) (emphasis added).

[31]   *See Ben Lomond, Inc. v. Municipality of Anchorage*, 761 P.2d 119, 122 (Alaska 1988) (quoting *Van Hyning v. Univ. of Alaska*, 621 P.2d 1354, 1355 (Alaska 1981)).

[32]   AS 39.50.135.

The case law and statutes cited by Alsworth and Anelon merely emphasize the simultaneous availability of the administrative remedy; these cases and statutes do not compel us to read an exhaustion requirement into the voters' express provision for a private right of action.

Next Alsworth and Anelon highlight statutory language suggesting that any fines imposed based on a failure to properly file a conflict of interest report will be "determin[ed]" by APOC, citing AS 39.50.135. They claim that although AS 39.50.100 may allow a plaintiff to bring a civil suit, "it does not allow for any remedies within that civil action, [as] the remedies are strictly within the jurisdiction of [APOC]." But this argument leads to an absurd result: surely the voters did not intend to create a private right of action through which no remedy could be granted. And even if, as Alsworth and Anelon suggest, the determination of fines falls within APOC's exclusive jurisdiction, a superior court still could adjudicate the merits of a citizen suit and refer the determination of fines to APOC. Here Seybert seeks fines in addition to several other remedies.

Finally, citing *Ben Lomond, Inc. v. Municipality of Anchorage*,[33] Alsworth and Anelon claim that "exhaustion [is] particularly appropriate" because Seybert raises both "issues that could be determined by the administrative agency and those that generally would not." But in *Ben Lomond*, the plaintiff sought only one remedy — monetary damages from the Municipality of Anchorage for revocation of its building permits.[34] A reversal of this initial revocation would have completely resolved the

---

[33] 761 P.2d 119 (Alaska 1988).

[34] *See id.* at 121.

-11- 7079

plaintiff's concern.[35] Here, in contrast, the imposition of fines based on counts one through three of Seybert's amended complaint — alleging violations of state conflict of interest law — would not necessarily have fully resolved Seybert's grievances under counts four and five, which alleged violations of the borough charter and Alaska's statutory prohibition against "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce."[36] Thus the fact that Seybert raises claims both within and outside of APOC's jurisdiction does not alone trigger the exhaustion requirement.

In summary, both the plain language and legislative history of the dual remedies in AS 39.50 — the citizen suit provision and the administrative complaint provision — show that exhaustion of administrative remedies is not required here. It was an error for the superior court to hold that it was required.

**B.      The Record Does Not Establish The Doctrine Of Primary Jurisdiction As An Independent Basis For The Superior Court's Decision.**

Even if Seybert were not required to exhaust administrative remedies, Alsworth and Anelon argue that the superior court had the discretion to apply the doctrine of primary jurisdiction to stay the proceedings. They assert that this doctrine provides an independent ground on which to affirm the superior court's grant of summary judgment. However we will affirm on independent grounds not relied on by the superior court only when those grounds are established by the record as a matter of law.[37] Because the superior court did not make a discretionary decision based on primary

---

[35]      *Id.* at 122.

[36]      *See* AS 45.50.471.

[37]      *McGee v. State*, 614 P.2d 800, 805 n.10 (Alaska 1980).

jurisdiction, we can affirm on this ground only if the superior court were required as a matter of law to stay the proceeding based on primary jurisdiction.

Primary jurisdiction is a judicially created prudential doctrine that applies "to claims properly cognizable in court [but] that contain some issue within the special competence of an administrative agency."[38] As we have explained, under the primary jurisdiction doctrine "a court may, in appropriate cases, stay or dismiss pending litigation so as to enable a proper agency to initially pass upon an aspect of the case calling for administrative expertise."[39] Such circumstances may arise "[w]hen a case raises questions of fact not within the ordinary experience of courts, or if the case requires the exercise of administrative discretion."[40] The doctrine is based on " 'the need for an orderly and reasonable coordination of the work of agencies and courts,' which is generally best achieved when courts decline to rule 'on a subject peculiarly within the agency's specialized field without first taking into account what the agency has to

---

[38] *Reiter v. Cooper*, 507 U.S. 258, 268 (1993).

[39] *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1032 (Alaska 1972), *overruled on other grounds by City & Borough of Juneau v. Thibodeau*, 595 P.2d 626 (Alaska 1979).

[40] *Matanuska Elec. Ass'n v. Chugach Elec. Ass'n*, 99 P.3d 553, 559 (Alaska 2004) (alteration in original) (quoting *Oil Heat Inst., Inc. v. Alaska Pub. Serv. Corp.*, 515 P.2d 1229, 1233 (Alaska 1973)).

offer.' "[41] Whether to invoke primary jurisdiction is left to the discretion of the superior court because the doctrine "is one of prudence, and not an absolute jurisdictional limitation."[42]

Seybert argues that "for the doctrine of primary jurisdiction to apply, 'at least some part of the case must fall within the *exclusive* jurisdiction of the administrative agency,' " relying on our language in *Greater Anchorage Area Borough v. City of Anchorage*.[43] This language, read in a vacuum, could suggest that a superior court may defer to an agency only when at least part of a claim falls within the agency's *exclusive* jurisdiction.[44] But this reading is inconsistent with other precedent, which recognizes that superior courts enjoy discretion when deciding whether to defer to an agency.[45] As we have noted, the doctrine's "purpose is to help a court decide whether

---

[41] *Id*. (citation omitted) (quoting *G & A Contractors, Inc. v. Alaska Greenhouses, Inc.*, 517 P.2d 1379, 1383 (Alaska 1974)).

[42] *Id.*

[43] 504 P.2d at 1033.

[44] *See id.* at 1033-34; *see also* 2 RICHARD J. PIERCE JR., ADMINISTRATIVE LAW TREATISE 14.2 at 1191 (5th ed. 2010) ("Sometimes courts confuse primary jurisdiction with exclusive statutory jurisdiction.").

[45] *See, e.g.*, *Matanuska Elec.*, 99 P.3d at 559-60 ("[T]he primary agency jurisdiction doctrine is one of prudence, and not an absolute jurisdictional limitation."); *G & A Contractors, Inc.*, 517 P.2d at 1383 ("This, of course, is hardly to say that the courts must in each and every case defer to an agency determination."); *Greater Anchorage Area Borough*, 504 P.2d at 1032 ("Under the . . . 'doctrine of primary jurisdiction,' a court may, in appropriate cases, stay or dismiss pending litigation so as to enable a proper agency to initially pass upon an aspect of the case calling for administrative expertise.").

it should *refrain from exercising its jurisdiction.*"[46]  But in cases where agency jurisdiction is exclusive, the court has no jurisdiction to "refrain" from exercising.

Seybert correctly asserts that APOC lacked *exclusive* jurisdiction over alleged violations of Alaska's conflict of interest laws, because AS 39.50.100 expressly provides for a private right of action to enforce those provisions in court.  But this assertion does not end our inquiry because in a case such as this, in which the superior court and agency share concurrent jurisdiction, a court may apply the primary jurisdiction doctrine to stay its proceedings until the agency reaches a decision.

"No fixed formula exists for applying the doctrine of primary jurisdiction."[47]  While we have yet to establish a standard for applying the primary jurisdiction doctrine, courts in other jurisdictions typically consider a number of factors,[48] including "(1) the extent to which the agency's specialized expertise makes it a preferable forum for resolving the issue, (2) the need for uniform resolution of the issue, and (3) the potential that judicial resolution of the issue will have an adverse impact on the agency's performance of its regulatory responsibilities."[49]  Based on our evaluation of these factors, we conclude that the record does not establish primary jurisdiction as an alternate basis on which to affirm the superior court's decision.

---

[46]  *G & A Contractors, Inc.*, 517 P.2d at 1383 (emphasis added).

[47]  *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956); *see Greater Anchorage Area Borough*, 504 P.2d at 1032 n.17 (citing *W. Pac. R.R. Co.* in its discussion about the scope of the primary jurisdiction doctrine).

[48]  *See* Paula K. Knippa, *Primary Jurisdiction Doctrine and the Circumforaneous Litigant*, 85 TEX. L. REV. 1289, 1311-12 (2007) (describing the various multifactor tests that the federal circuit courts of appeal apply in evaluating the application of primary jurisdiction doctrine).

[49]  PIERCE, *supra* note 44, at 1162.

First, by including a citizen suit provision, the legislature evinced its clear intent to make the courts available to hear alleged violations of Alaska's conflict of interest laws. The inclusion of parallel citizen suit and administrative complaint provisions indicates that the legislature views the court as a competent and desirable forum in which to bring conflict of interest claims, notwithstanding the authority of APOC to also hear such claims. Applying the primary jurisdiction doctrine to claims brought under the citizen suit provision of AS 39.50.100 would subvert the legislature's express intent to allow people to enforce Alaska's conflict of interest laws through the courts, as evident in the plain text of AS 39.50.100. Because the citizen suit provision clearly designates the courts as competent to hear Seybert's conflict of interest claims, the first factor, specialized agency expertise, does not favor deferring to APOC.

Second, there is minimal risk of inconsistent resolutions of this issue. When the superior court stayed the proceedings, there was no pending administrative proceeding on Seybert's claims before APOC. And in the past APOC dismissed complaints by Seybert that have raised similar allegations.[50] In 2010 one Seybert petitioner filed a complaint with APOC against Alsworth and another elected official in the borough alleging violations of the conflict of interest law.[51] APOC ultimately concluded that no such violations had occurred and dismissed the complaints.[52] Further,

---

[50] Other courts have found that an agency's past failure to take any action counsels against applying the primary jurisdiction doctrine in subsequent cases. *See, e.g., Nat'l Wildlife Fed'n v. Consumers Power Co.*, 657 F. Supp. 989, 1001 (W.D. Mich. 1987), *rev'd on other grounds*, 862 F.2d 580 (6th Cir. 1988).

[51] Complaint, *Holman v. Alsworth*, No. 10-14-POFD (Alaska Pub. Offices Comm'n Sept. 20, 2010); Complaint, *Holman v. Wilder*, No. 10-15-POFD (Alaska Pub. Offices Comm'n Sept. 20, 2010).

[52] *Holman v. Alsworth*, No. 10-14-POFD at 4 (Alaska Pub. Offices Comm'n (continued...)

even if Seybert now filed a complaint with APOC, there is no guarantee that APOC would investigate the allegations.[53] Thus there is little risk that judicial resolution would conflict with a ruling by APOC.

Third, judicial resolution of Seybert's allegations is unlikely to encroach on APOC's regulatory responsibilities. Seybert's claims do not fall within APOC's regulatory expertise: Seybert is not challenging regulations promulgated by APOC nor is Seybert challenging an internal agency procedure.[54] Further, there is no indication that APOC is currently involved in rulemaking or in revising the regulations at issue. Rather Seybert's claims arise under existing conflict of interest law and regulations, and courts are well versed in statutory interpretation.[55] Here Seybert simply asks the court to

---

[52]     (...continued)
Mar. 2, 2011) ("Because the Commission refused to find a violation of the statute in the nearly identical circumstances of the *Wilder* case, it is inappropriate to conclude that such conduct constituted a violation of the law in this case."); *Holman v. Wilder*, No. 10-15-POFD at 3 (Alaska Pub. Offices Comm'n Mar. 2, 2011) ("[T]he Commission does not agree that a violation of the statute can be established given the ambiguous nature of the reporting requirements and the agency's role in contributing to the [elected official's] confusion as to how to properly report his financial affairs.").

[53]     *See* 2 AAC 50.870(c)-(d) (authorizing APOC to reject a complaint without investigation if it determines that the complaint fails to meet certain criteria).

[54]     *Cf. In re Real Estate Brokerage Antitrust Litig.*, 622 P.2d 1185, 1189 (Wash. 1980) (declining to apply the doctrine of primary jurisdiction based partly on the fact there was no challenge to an agency regulation or to agency procedures).

[55]     *See Union Oil Co. of Cal. v. Dep't of Revenue*, 560 P.2d 21, 23 (Alaska 1977) (Where the issues "to be resolved turn on statutory interpretation, the knowledge and expertise of the agency is not conclusive of the intent of the legislature in passing a statute. Statutory interpretation is within the scope of the court's special competency, and it is our duty to consider the statute independently." (citations omitted)); *In re Real Estate Brokerage Antitrust Litig.*, 622 P.2d at 1189 ("[S]tandards to be applied in [an] (continued...)

enforce the standards that the legislature and APOC already determined are appropriate. Further, Seybert's citizen suit is not a collateral attack on any permitting or regulatory decision by APOC; the citizen suit complements and enhances APOC's regulatory efforts.[56] The legislature conceives of APOC as a "watchdog agenc[y]," and its stated purpose in adding the administrative complaint provision was to "strengthen the oversight of Alaska's ethics laws."[57] Allowing court enforcement of the conflict of interest law complements, rather than encroaches on, the role of APOC and the goal of the administrative complaint provision.

In light of these three factors, the record does not establish as a matter of law that the superior court was required to apply the primary jurisdiction doctrine to stay Seybert's claims pending resolution by APOC. In fact these factors may counsel against the application of the doctrine to Seybert's claims. Thus the primary jurisdiction doctrine does not provide an alternative ground on which we can affirm the superior court's grant of summary judgment.

## V. CONCLUSION

We conclude, first, that it was an error for the superior court to hold that Seybert was required to exhaust his administrative remedies before bringing a citizen

---

[55]    (...continued) antitrust action are within the conventional competence of the courts and the judgment of the agencies is not likely to be helpful in the application of these standards to the facts of this case.").

[56]    *Cf. Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987) (explaining that a citizen suit under the federal Clean Water Act "is meant to supplement rather than to supplant governmental action").

[57]    Minutes, H. Fin. Comm. Hearing on H.B. 281, 25th Leg., 2d Sess. 2:33-2:36 (Mar. 31, 2008) (testimony of Mike Sica, staff to Representative Bob Lynn, bill sponsor).

suit, and, second, that the record does not establish the doctrine of primary jurisdiction as an independent basis on which to affirm the superior court's decision. We thus REVERSE the superior court's order granting summary judgment and staying the petitioners' claims.